816 F.2d 238
 16 Collier Bankr.Cas.2d 702, Bankr. L. Rep. P 71,754
In re K.C. MACHINE & TOOL COMPANY, Debtor,
June E. MORGAN, Trustee; The Detroit Edison Company; Dery
& Dery, P.C.; Hill, Lewis, Adams, Goodrich &
Tait, Plaintiffs-Appellees,
v.
K.C. MACHINE & TOOL COMPANY, Defendant,
City of Detroit, Defendant-Appellant.
 No. 85-1630.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 7, 1986.
Decided April 14, 1987.
 
 Peter W. Macuga, II, Mary Richman (argued) Detroit, Mich., for defendant-appellant.
 June E. Morgan (argued), Southfield, Mich., Peter A. Jackson (argued), Detroit, Mich., for plaintiffs-appellees.
 Before MERRITT, KRUPANSKY and RYAN, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 This case presents a factually complex but legally rather simple issue: whether, upon the facts presented, the bankruptcy court correctly ordered that certain assets of the bankrupt business be abandoned to the debtor. The district court reversed the bankruptcy court's order of abandonment. We affirm the judgment of the district court.
 
 I.
 
 2
 Debtor, K.C. Machine Company, had been operating under a Chapter 11 reorganization, incurring substantial Chapter 11 administrative debts to some thirty-five trade creditors when, moments before a hearing was to be held upon the motion of the City of Detroit for payment of its tax lien, the debtor converted its Chapter 11 proceeding to a Chapter 7 liquidation. Appellee June Morgan became the trustee. At the time of the conversion, the debtor owned machinery and equipment with an appraised value of $523,925, and an escrow account of $210,000 in cash. All of the debtor's assets were subject to tax liens held by the City of Detroit and other local taxing authorities, in a total amount of approximately $156,000. The assets were also subject to a security interest held by Comerica Bank for an amount in excess of $700,000.
 
 
 3
 The trustee located a prospective buyer who was willing to pay $640,000 for the machinery and equipment. The City of Detroit's tax lien was approximately $65,000, and the total liens on the property approximate $1,100,000. Maintenance of the assets was costing the estate $3,500 a week. All of the interested parties agreed that the $640,000 purchase offer was the best offer available.
 
 
 4
 The trustee applied to the bankruptcy court for an order to sell the assets for $640,000, free and clear of liens.
 
 
 5
 The largest secured creditor, Comerica Bank, consented to the sale and supported the application. No interested party or creditor, except the City of Detroit, objected. Detroit argued that the assets should not be sold free and clear of liens, but should be abandoned to the debtor. The significance of that position, greatly simplified, is that if the property were abandoned under the provisions of 11 U.S.C. Sec. 554(b) (1986 Supp.)[1] the City of Detroit, as a tax creditor, would stand in a position of priority ahead of all non-tax creditors except Comerica Bank. If the property were sold free and clear of liens under 11 U.S.C. Sec. 363(f) (1979 & 1986 Supp.)[2] , and distributed under 11 U.S.C. Sec. 724(b) (1979 & 1986 Supp.)[3] , the City would lose its priority status and its lien would become subordinated to the claims of the Chapter 11 creditors. To the extent some of its tax liens accrued during the Chapter 11 reorganization attempt, those liens would hold equal rank with the claims of the other Chapter 11 creditors.
 
 
 6
 Detroit's specific objection to the proposed sale was that since the bankrupt estate had no equity in the property (the liens far exceeded the proposed sale price), and since, Detroit did not consent, the validity of their lien was not in bona fide dispute, and they had not been compelled to accept a money satisfaction of the lien, that the bankruptcy court was not empowered to confirm the sale under Sec. 363(f).[4] The bankruptcy court agreed and, reading Sec. 363(f)(4) and (5) narrowly[5], concluded that the sale free and clear of liens would be "inequitable." The court refused to confirm the sale.
 
 
 7
 The City, joined by Comerica Bank, then moved for abandonment of the property to the debtor. The bankruptcy court found that abandonment was "in the best interests of the estate and its creditors" and ordered the trustee to abandon the property.[6] The trustee appealed both decisions of the bankruptcy court to the district court. Comerica Bank sought and was given permission to sell the property for $640,000 and placed the proceeds in an escrow account pending appeal. Detroit did not move to stay the sale pending the appeal.
 
 
 8
 The district court determined that since the property had now been sold, the trustee's appeal of the bankruptcy court's denial of confirmation of the sale free and clear of liens was moot. The district court then reversed the abandonment order and instructed the trustee to distribute the proceeds together with the balance of the estate in accordance with the Bankruptcy Code.
 
 
 9
 The City of Detroit has now appealed to this court the district court's order reversing the abandonment order. Neither Detroit nor the trustee has appealed the district court's decision that the trustee's appeal of the order denying confirmation of the sale free and clear of liens was moot.
 
 
 10
 To repeat, the specific issue presented to us is:
 
 
 11
 Whether the district court erred in reversing the bankruptcy court's order that the trustee abandon the machinery and fixtures to the debtor.
 
 
 12
 We conclude that the district court correctly determined that the bankruptcy court erred in ordering abandonment.
 
 II.
 
 13
 There is a threshold question which has unnecessarily confused the issues in this factually complex case and should be laid to rest at the outset.
 
 
 14
 In its brief on appeal, the City of Detroit vigorously argues that the district court erred in dismissing the trustee's appeal of the bankruptcy court's order denying confirmation of the sale free and clear of liens. Despite the fact that it has not appealed that issue, the City claims that the district court's reversal of the abandonment order and refusal to reverse the order denying confirmation of the sale "defies logic" and that the two issues are "inextricably linked and, in the instant context, conceptually must be decided together." That is so, Detroit argues, because the bankruptcy court had only two means of disposing of the property, sale free and clear of liens or compelled abandonment. If the property could not be sold free and clear of liens, Detroit claims, then the court must order the property abandoned.
 
 
 15
 We disagree.
 
 
 16
 It is noteworthy that the bankruptcy court did not feel such an inextricable link existed. The bankruptcy court held two separate hearings on what it considered two independent motions. The district court also considered that the issues were not inextricably linked as evidenced by its finding that one of the issues, denial of confirmation of the sale, was moot.
 
 
 17
 We think the City's argument fails at two levels. First, on the facts of this case, the Bankruptcy Code presented more options than simply sale of the assets free and clear of liens, or abandonment. For example, Sec. 726 and Sec. 724 permit distribution of the property itself or its proceeds; Sec. 725 allows disposition of certain property; Sec. 508 contemplates distributions outside of the Code; the automatic stay could be lifted and foreclosure proceedings brought, In re Pepper Ridge Blueberry Farms, 33 B.R. 696 (Bankr.W.D.Mich.1983); Goger v. United States (In re Janmar, Inc.), 4 B.R. 4 (Bankr.N.D.Ga.1979); or the property could be sold subject to the liens, see, e.g., In re Riverside Investment Partnership, 674 F.2d 634 (7th Cir.1982). Thus, sale free of liens or abandonment are not the only options and there is no "inextricable link" between them.
 
 
 18
 Second, even assuming the Code presented only two distribution choices, abandonment and sale free and clear of liens, the trustee still had options other than abandonment within the context of sale of the assets, despite the denial of confirmation of sale. When the bankruptcy court denied confirmation of sale, the trustee and an attorney for one of the administrative creditors inquired whether a "Motion to Subordinate the City" might eliminate the concerns that led the court to refuse to confirm the sale. The court replied, "I will decide that when it gets here." Because the court ordered the property abandoned, the trustee never had an opportunity to present that motion. In addition, the trustee might have taken a number of other steps to persuade the court to resolve the matter without ordering abandonment. For example, the trustee could have taken whatever steps the court felt necessary under Sec. 363(f)(5) to compel the City, which was the lone non-consenting party, to accept some kind of money satisfaction.[7]
 
 
 19
 In all events, it is clear that abandonment and refusal to confirm the sale were not "inextricably linked," as the trustee had other options to pursue. We need address that argument no further.
 
 
 20
 Detroit also claims that if the abandonment order was improper, the liens continue to attach to the property because the sale of the property free and clear of liens was not confirmed. We disagree.
 
 
 21
 Whether the abandonment order was valid or not, the property has been sold to a good faith purchaser. The City of Detroit did not move to stay the sale pending appeal. That being so, the City's argument that the liens continue to attach to the property is moot and the liens now attach solely to the proceeds of the sale. Either the proceeds will be abandoned to the secured creditors or they will be distributed pursuant to Sec. 724(b). The district court correctly held that any further dispute as to the property itself is moot. Southerton Corp. v. United Penn Bank (In re Southerton Corp.), 46 B.R. 391 (M.D.Pa.1982). See also Dahlquist v. First National Bank, 737 F.2d 733 (8th Cir.1984); Wood v. Walker-Pinkston Co. (In re Brickyard), 735 F.2d 1154 (9th Cir.1984); Sulmeyer v. Karbach Enterprises (In re Exennium, Inc.), 715 F.2d 1401 (9th Cir.1983); Tompkins v. Frey (In re Bel Air Associates), 706 F.2d 301 (10th Cir.1983); Bleaufontaine, Inc. v. Roland International (In re Bleaufontaine, Inc.), 634 F.2d 1383 (5th Cir.1981).[8] All the sale of assets did was to make either abandonment or distribution more conveniently effected by reducing the property to a more liquid form of asset. Sale has not made distribution possible, only easier to accomplish.
 
 III.
 
 22
 We turn now to the issue that is appealed. Despite the sometimes inscrutable convolutions of the several sections of the Bankruptcy Code that are theoretically relevant to this case, the facts that underlie our decision can be described rather simply.
 
 
 23
 The principal litigants, the trustee in bankruptcy acting in a general way on behalf of the Chapter 11 creditors, and the City of Detroit acting for itself and a few other local taxing authorities, are contesting for a fund of $850,000. Comerica Bank, the largest single creditor, apparently will not be affected by our decision. As a first priority creditor, it will receive approximately $680,000 according to trustee Morgan's calculations. The amount actually in controversy, therefore, is approximately $170,000, the amount left in the bankrupt estate. That amount is subject to tax liens of $156,000, not including taxes owed to the state and federal governments.
 
 
 24
 If we reverse the decision of the district court and, in effect, affirm the bankruptcy court's order that the property be abandoned under Sec. 554(b), the secured tax creditors, including the City of Detroit, because of their priority status, will take most of the $170,000. If we affirm the district court's decision that the property should be distributed under Sec. 724(b) as assets of the bankrupt estate, the $170,000 will be distributed first to the Chapter 11 creditors up to the amount of the tax liens, with the remainder going to the City of Detroit and the other taxing authorities.
 
 IV.
 
 25
 The City of Detroit's argument for abandonment of the property and against its distribution under Sec. 724(b) is that, assuming the bankruptcy court's narrow reading of Sec. 363(f)(4) and (5) was correct, and, pursuant to Sec. 363(f)(3), when a debtor's estate has no equity in the property, it cannot be sold free and clear of liens and must be abandoned to the debtor and, therefore, to the secured creditors. If the property is abandoned, the estate loses its interest in the property and the assets cannot be distributed under Sec. 724(b).
 
 
 26
 Although the City's attempt to tie the sale free and clear of liens issue to the abandonment issue is entirely meritless, there is considerable merit to the contention that because the estate lacks equity in the property--or its proceeds--that compelled abandonment was proper.
 
 
 27
 The trustee argues that if the property is distributed under Sec. 724(b), the City's tax liens are subordinated to the claims of the Chapter 11 creditors with the result that the property is valuable to the estate and cannot be abandoned.
 
 
 28
 For the reasons stated below, we hold that the subordination of tax liens provided in Sec. 724(b) provides a benefit--promising in excess of $156,000--to the debtor's estate. Because the estate is promised this benefit by administration of the property, court-ordered abandonment under Sec. 554(b) was error.
 
 V.
 
 29
 The bankruptcy court ordered the property abandoned because it felt abandonment was "in the best interest of the estate and its creditors." The district court reversed, finding the bankruptcy court erred because Sec. 724(b) provides a benefit to the estate making abandonment improper.
 
 
 30
 Section 554(b), allowing the court to order abandonment, provides:
 
 
 31
 "On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."
 
 
 32
 11 U.S.C. Sec. 554(b) (1986 Supp.).
 
 
 33
 The bankruptcy court ordered abandonment because it found that since the estate had no equity in the property, it was of no value or benefit to the estate.
 
 
 34
 Our standard of review of the decisions of the bankruptcy and district courts is somewhat complex. We review the district court's judgment of reversal de novo. Section 554(b) gives the bankruptcy court discretion in ordering abandonment, if it first finds neither benefit nor value inuring to the estate from administration of the property. The trustee did not attack the bankruptcy court's exercise of discretion, but challenged its finding of fact that the property was of no value or benefit to the estate. Fact findings of the bankruptcy court are reviewed for clear error. But, where the bankruptcy court's fact finding arises from a misunderstanding of the law, it is reviewed for plain error of law. Brady v. Andrew (In re Commercial Western Finance Corp.), 761 F.2d 1329 (9th Cir.1985); Martin v. United States (In re Martin), 761 F.2d 472 (8th Cir.1985). Cf. In re Bleaufontaine, 634 F.2d 1383 (5th Cir.1981).
 
 
 35
 The trustee argues that the bankruptcy court ordered abandonment because it misunderstood the relationship between Sec. 724(b) and Sec. 554(b). The district court held that the bankruptcy court erred in concluding that the bankrupt estate had no equity in the property because Sec. 724(b) subordinates Detroit's tax liens, thereby creating a benefit to the estate which forecloses the option of compelled abandonment. Detroit counters that Sec. 724(b) creates value for the estate only during distribution proceedings, and that abandonment is a valid independent alternate mode of disposing of the estate's property.
 
 
 36
 We must decide whether, as a matter of law, Sec. 724(b) subordination of tax liens to administrative expenses creates value or benefit to the debtor's estate for purposes of Sec. 554(b) abandonment proceedings. We, therefore, review the bankruptcy court for plain error.
 
 
 37
 Section 724, which subordinates tax liens to certain administrative expenses for distribution purposes during a Chapter 7 liquidation, provides:
 
 
 38
 "Treatment of certain liens
 
 
 39
 * * *
 
 
 40
 * * *
 
 
 41
 "(b) Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title and that secures an allowed claim for a tax, or proceeds of such property, shall be distributed--
 
 
 42
 "(1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien [Comerica apparently falls in this class];
 
 
 43
 "(2) second, to any holder of a claim of a kind specified in section 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), or 507(a)(5) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien [The creditors represented by trustee Morgan and Hill, Lewis fall in this class];
 
 
 44
 "(3) third, to the holder of such tax lien, to any extent that such holder's allowed tax claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection [Detroit and the other taxing authorities fall in this class]...."
 
 
 45
 Id. (emphasis added). It is clear, therefore, that Congress chose to subordinate tax liens, which normally have priority by law, to the Sec. 507(a) administrative expenses involved herein. While debtor was in a Chapter 11 reorganization, it incurred substantial debts to some thirty-five creditors. No one challenges the legitimacy of the administrative expenses involved. It is unlikely that the Chapter 11 creditors would have allowed the debtor to attempt its Chapter 11 reorganization absent the protection given to them by Congress. One of the policies of the Bankruptcy Code is to allow debtors several opportunities to get a "fresh start." Chapter 11 is one such opportunity. That opportunity would be unavailing if creditors were unwilling to extend credit to a bankrupt. To stimulate that willingness, Congress legislated protection for these administrative creditors. Section 724(b) provides such protection by subordinating tax liens in a Chapter 7 liquidation to the Chapter 11 administrative expenses. Contrary to Detroit's urging, we decline to pass judgment on the wisdom of Sec. 724(b). Congress passed that legislation for reasons sufficient unto itself.
 
 
 46
 Section 724(b) allows for an order of distribution which avoids certain problems of the circuity of liens. Detroit contends that the ranking of creditors for distribution of assets provided in Sec. 724(b) creates no value to the estate in the assets to be distributed for Sec. 554(b) purposes because Sec. 724(b) applies only when the distribution of the assets begins. Thus, they argue, because Sec. 554(b) compelled abandonment takes place prior to, and independent of, the subsequent Sec. 724(b) distribution, where the estate holds no equity in the assets, at the time the Sec. 554(b) determination is being made, the bankruptcy court properly compelled the trustee to abandon the assets as valueless to the estate. Once the bankruptcy court orders abandonment as an alternate disposition of the property, the property is no longer in debtor's estate and is not available for distribution under Sec. 724(b). Thus, Sec. 724(b) created no value for the estate in the assets in this case.
 
 
 47
 The trustee and appellee Hill, Lewis argue, on the other hand, that immediately upon conversion to Chapter 7, Sec. 724(b) automatically subordinated Detroit's tax lien for all purposes. Alternatively, they argue, distribution is mandatory and specific to Chapter 7, while abandonment is discretionary and general to the Code. This would force the court, as a matter of statutory interpretation, to distribute all property under Sec. 724(b) after conversion to Chapter 7.
 
 
 48
 Contrary to the argument of the trustee and Hill, Lewis, the language of Sec. 724(b) providing that "property in which the estate has an interest ... shall be distributed" does not make Sec. 724(b) distribution of all property in the estate at the time of conversion to Chapter 7 liquidation mandatory. Rather, Sec. 724(b) merely mandates a particular method of distribution of what property is left in debtor's estate at the time of distribution. After abandonment, the property is not in debtor's estate, and is therefore not available for distribution.
 
 
 49
 However, the trustee's argument that Sec. 724(b) creates some benefit to debtor's estate, precluding abandonment, has more merit.
 
 Section 554(b) provides:
 
 50
 "(b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."
 
 
 51
 Id. (1986 Supp.).
 
 
 52
 Therefore, before ordering abandonment, the bankruptcy court must find either: 1) the property is burdensome to the estate; or, 2) the property is both of inconsequential value and inconsequential benefit to the estate. The property involved here is not burdensome to debtor's estate. The trustee had a ready buyer for the property. The property is of inconsequential present value to the estate in that the estate holds no equity in the property and, since distribution has not begun, Sec. 724(b) has not yet subordinated Detroit's tax lien to the administrative creditors. Thus, the question remaining is whether administration of the property will benefit the estate.
 
 
 53
 The City equates "benefit" with "value," arguing that the property lacks value or benefit to the estate because the estate lacks equity in it. But "benefit" does not mean the same as present "value." Originally, Sec. 554(b) ostensibly allowed abandonment if the property was burdensome or of inconsequential value to the estate. Congress clarified its intent by amending Sec. 554(b) in 1984 to require a finding of both inconsequential value and inconsequential benefit to the estate before the bankruptcy court can order a compelled abandonment. Similarly, pre-Code case law spoke of value or some other benefit to the estate precluding abandonment. See, e.g., Federal Land Bank v. Kurtz (In re Post), 70 F.2d 46 (4th Cir.1934).
 
 
 54
 At this point, the policy of Sec. 554(b) is instructive. The trustee's purpose is to liquidate the estate for the benefit of unsecured creditors. The trustee need not take property burdensome to the estate because the unsecured creditors would not benefit thereby. See In re Eli Witt Co., 39 B.R. 984 (Bankr.M.D.Fla.1984); In re Peninsula Roofing & Sheet Metal, Inc., 9 B.R. 257 (Bankr.W.D.Mich.1981). Thus, in its discretion, the trustee may abandon property to the debtor where administration thereof would not benefit the estate--the creditors. The secured creditors may then foreclose upon it. In enacting Sec. 554, Congress was aware of the claim that formerly some trustees took burdensome or valueless property into the estate and sold it in order to increase their commissions. Some of the early cases condemned this particular practice in no uncertain terms, and decried the practice of selling burdensome or valueless property simply to obtain a fund for their own administrative expenses. See, e.g., Standard Brass Corp. v. Farmers National Bank, 388 F.2d 86 (7th Cir.1967); Miller v. Klein (In re Miller), 95 F.2d 441 (7th Cir.1967); Seaboard National Bank v. Rogers Milk Products Co., 21 F.2d 414 (2d Cir.1927). Congress then gave the courts the power to order the trustee to abandon property at the request of a party in interest if the property was burdensome or valueless and of no benefit to the estate. 11 U.S.C. Sec. 554(b) (1986 Supp.).
 
 
 55
 An order compelling abandonment is the exception, not the rule. Abandonment should only be compelled in order to help the creditors by assuring some benefit in the administration of each asset. In dissent in Midlantic National Bank v. New Jersey Dep't. of Environmental Protection, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986), Justice Rehnquist outlined the purposes of abandonment.
 
 
 56
 "Abandonment is 'the release from the debtor's estate of property previously included in that estate.' ... [C]ourts had developed a rule permitting the trustee to abandon property that was worthless or not expected to sell for a price sufficiently in excess of encumbrances to offset the costs of administration ... [footnote and citation omitted]. This judge-made rule served the overriding purpose of bankruptcy liquidation: the expeditious reduction of the debtor's property to money, for equitable distribution to creditors, Kothe v. R.C. Taylor Trust, 280 US 224, 227, 74 LEd 382, 50 SCt 142 (1930). 4 Collier p 554.01. Forcing the trustee to administer burdensome property would contradict this purpose, slowing the administration of the estate and draining its assets."
 
 
 57
 Id. at ----, 106 S.Ct. at 763, 88 L.Ed.2d at 870. Abandonment should not be ordered where the benefit of administering the asset exceeds the cost of doing so.[9] Likewise, in In re Tyler, 15 B.R. 258 (Bankr.E.D.Pa.1981), the court stated:
 
 
 58
 "The only issue before the court in an application for abandonment is whether there is a reason that the estate's interest in the property should be preserved or, instead, whether the property is so worthless or burdensome to the estate that it should be removed therefrom."
 
 
 59
 Absent an attempt by the trustee to churn property worthless to the estate just to increase fees, abandonment should very rarely be ordered. Clearly, administration of the property at issue benefits the estate. Administering the property secures a fund equal to the amount of the tax liens, in excess of $156,000, to pay Chapter 11 administrative creditors. The argument that no benefit accrues to the estate from Sec. 724(b) because distribution has not begun is unrealistic and unpersuasive. That would equate "benefit" with present "value," making the 1984 amendment redundant. A future value accruing to the estate from the property is a benefit promised by administration of the asset.
 
 
 60
 " '[A] trustee is under no duty to retain the title to a piece of property or a cause of action that is so heavily encumbered, or so costly in preserving or securing, that it does not promise any benefit to the funds available for distribution.' "
 
 
 61
 Knapp v. Seligson (In re Ira Haupt & Co.), 398 F.2d 607, 612-13 (2d Cir.1968) (quoting 4A Collier, Bankruptcy, Sec. 70.42 (14th ed. 1967)) (emphasis added), quoted in In re Pepper Ridge Blueberry Farms, 33 B.R. 696 (Bankr.W.D.Mich.1983). Here, because of Sec. 724(b), administering the property promises a large benefit by increasing the funds available for distribution to administrative creditors.
 
 
 62
 In Pepper Ridge, 33 B.R. at 698, the court stated:
 
 
 63
 "Congress only intended the abandonment proceeding to be used where there is no question of fact or law involved and for a trustee or debtor in possession to hold assets for no benefit to the estate would be unconscionable. Otherwise, a creditor or one claiming title ... should proceed to either file a motion for relief from stay or a complaint under Rule 7001."
 
 
 64
 We conclude that compelled abandonment is not available where administration promises a benefit to the estate. Administration promises a benefit in this case by virtue of Sec. 724(b). Therefore, the bankruptcy court erred in ordering abandonment.
 
 
 65
 Furthermore, although, as Detroit correctly points out, several cases have ordered abandonment simply where the debtor's estate lacked equity in the property because the secured liens exceeded the value of the property, the trustees in those cases did not point to any provision of the Code which would later defeat a secured creditor, thereby making the property beneficial to retain in the estate. See Chase Manhattan Bank v. Edmondson (In re Cunningham), 48 B.R. 509 (Bankr.M.D.Tenn.1985); Continental Bank v. Freehling (In re Karl A. Neise, Inc.), 31 B.R. 409 (Bankr.S.D.Fla.1983); In re Manicure, 29 B.R. 248 (Bankr.W.D.Va.1983); In re Anspach, 13 B.R. 208 (Bankr.E.D.Pa.1981); In re Brannan, 5 B.R. 505 (D.V.I.1980). In four other cases, the secured creditor's lien on the property was subordinated to the trustee's interest by some other provision of the Code. In re Joliet Will Community Action Agency, 58 B.R. 973 (Bankr.N.D.Ill.1986); In re Air Vermont, Inc., 41 B.R. 486 (Bankr.Vt.1984); First National Exchange Bank v. Kelly (In re Kelly), 21 B.R. 495 (Bankr.W.D.Va.1982); In re Pacific Sunwest Printing, 6 B.R. 408 (Bankr.S.D.Cal.1980). In those cases, the subordination of the secured creditors to the trustee defeated motions for abandonment. Likewise here, Sec. 724(b) would subordinate the City's lien to the trustee for the administrative creditors, defeating Detroit's motion for abandonment. This result is also suggested by In re Darnell, 58 B.R. 122 (Bankr.W.D.Ky.1986). Although Darnell did not deal with abandonment, it specifically addressed the effect Sec. 724(b) has on the balance of the Code:
 
 
 66
 "[S]ection 724(b) of the Bankruptcy Code ... modifies the secured claim status of the IRS lien so that it is, for bankruptcy purposes, an unsecured priority tax claim."
 
 
 67
 Id. at 122-23.
 
 
 68
 Traditionally, administrative expenses were not charged against secured creditors, In re Trim-X, Inc., 695 F.2d 296, 301 (7th Cir.1982), therefore, there was no benefit accruing to the estate absent equity in the property or some exception. But this situation has been expressly changed by the Code, which subordinates the tax lien to the administrative creditors, in effect charging the administrative expense against the secured tax creditor.
 
 
 69
 Because the district court correctly reversed the error of law made by the bankruptcy court in ordering the trustee to abandon property which Sec. 724(b) makes beneficial to the estate, we affirm.
 
 
 70
 MERRITT, Circuit Judge, dissenting.
 
 
 71
 Times have changed in federal court. Faced with similar reasoning and the same result from a district court 60 years ago, Judge Swan and Judge Hand reacted differently in Seaboard National Bank v. Rogers Milk Products Co., 21 F.2d 414, 417 (2d Cir.1927):
 
 
 72
 It is a shocking result, and such as justly brings receiverships into disrepute in the popular mind.
 
 
 73
 * * *
 
 
 74
 * * *
 
 
 75
 We can conceive of no benefit which the estate in receivership could obtain by selling free of liens, and of no interest which the receivers could have in so selling, except to get fees for themselves and their attorneys. We wish to condemn in no uncertain terms the practice of permitting the receiver to sell free of liens and without the consent of the lienors, under such circumstances.
 
 
 76
 Here the Court has extinguished the tax lien of a city, a prior perfected property right, and has redistributed public revenues to a group of Chapter 11 administrative creditors, mainly Detroit law firms, who had no prior security or other perfected property interest in any of the property of the bankrupt. The lawyers, whose unsecured accounts arose in the administration of the receivership after the city had perfected its tax liens, are given the public tax funds. Such a result may raise serious constitutional questions, but these questions have not been suggested or briefed by the parties.
 
 
 77
 The Bankruptcy Reform Act, Sec. 363(f), 11 U.S.C. Sec. 363(f), allows, liens to be extinguished and property sold free of liens "only if ... the price at which such property is to be sold is greater than the aggregate value of all liens on such property"--with a few exceptions not present here. No conditions exist here that permit the city's liens to be extinguished upon sale, and neither this Court nor the District Court suggest any. There is no justification under the Bankruptcy Code, in equity or in sound policy for taking prior property rights held by the public and transferring them to private business interests who took the risk of doing business with the Chapter 11 debtor.
 
 
 78
 There are a number of routes under the Bankruptcy Code by which the superior interest of the city in the property could be preserved now that the property has in fact been sold and the funds escrowed. See, e.g., 11 U.S.C. Sec. 363(e): "Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold or leased, or proposed to be used, sold or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest." The Legislative history of Sec. 363(f) makes it clear that any "sale under this subsection is subject to the adequate protection requirement. Most often, adequate protection in connection with the sale free and clear of other interests will be to have those interests attached to the proceeds of the sale." House Rep. No. 95-595, 95th Cong., 1st Sess. 345 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6302. No such condition has been attached to the proceeds of the sale here. Rather, the proceeds will be turned over to the lawyers at the expense of the city's interest.
 
 
 79
 For our purposes the simplest procedure would be to reverse the decision of the District Court and reinstate the decision of the Bankruptcy Court ordering abandonment of the property. This is the method approved in In re Stroud Wholesale, Inc. 47 B.R. 999 (D.N.C.1985), affirmed Richardson v. Pitt County, No. 85-1422 (4th Cir., decided Jan. 21, 1986). This method or the impressment of a constructive trust on the proceeds under Sec. 363(e) will prevent the Bankruptcy Reform Act from turning debtors into distressed vessels on a sea of Sec. 724 spoils for privateers to plunder.
 
 
 
 [1]
 11 U.S.C. Sec. 554(b) (1986 Supp.) provides:
 "On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."
 
 
 [2]
 11 U.S.C. Sec. 363(f) (1979 & 1986 Supp.) provides:
 "(f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if--
 "(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
 "(2) such entity consents;
 "(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
 "(4) such interest is in bona fide dispute; or
 "(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest."
 
 
 [3]
 11 U.S.C. Sec. 724(b) provides:
 "(b) Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title and that secures an allowed claim for a tax, or proceeds of such property, shall be distributed--
 "(1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;
 "(2) second, to any holder of a claim of a kind specified in section 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), or 507(a)(5) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;
 "(3) third, to the holder of such tax lien, to any extent that such holder's allowed tax claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;
 "(4) fourth, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is junior to such tax lien;
 "(5) fifth, to the holder of such tax lien, to the extent that such holder's allowed claim secured by such tax lien is not paid under paragraph (3) of this subsection; and
 "(6) sixth, to the estate."
 
 
 [4]
 The court could not sell the property free and clear of liens under Sec. 363(f)(1) because Detroit's interest cannot be so obviated under applicable non-bankruptcy law. Sec. 363(f)(2) did not apply because Detroit did not consent. Detroit argued Sec. 363(f)(3) could not apply because its interest was a lien, and the price at which the property would be sold, $640,000, is not greater than the aggregate value of the liens, $1,100,000. Thus, there being no equity in the property to the estate (liens' value greater than proposed sale price), the property could not be sold free and clear under Sec. 363(f)(3)
 
 
 [5]
 Detroit successfully contended Sec. 363(f)(4)'s provision for sale free and clear of liens where the non-consenting interest is in bona fide dispute applies only to bona fide disputes as to the validity of the liens, not disputes as to the rank order of the liens. Detroit also successfully contended that under Sec. 363(f)(5) an entity must be compelled in actuality to accept a money satisfaction of its interest, rather than that such entity could theoretically be compelled to accept such satisfaction, before the property could be sold free and clear of liens. As we need not reach these issues, we do not purport to address the propriety of the bankruptcy court's narrow interpretations of Sec. 363(f)(4) and (5)
 
 
 [6]
 While, technically, bankruptcy assets which are "abandoned" are abandoned to the debtor, in actuality the abandonment here was to Comerica Bank, whose lien on the assets was greater than their market value
 
 
 [7]
 We do not necessarily agree with the bankruptcy court's holding that actual, as opposed to theoretical, compulsion is required under Sec. 363(f)(5); we simply do not reach that issue
 
 
 [8]
 Indeed, the irrelevancy of the alleged "inextricable link" is most evident here. The fact that any and all liens attached to the proceeds upon the sale evinces the fact the abandonment question is entirely independent of the sale free and clear of liens issue
 
 
 [9]
 Goger v. United States (In re Janmar, Inc.), 4 B.R. 4 (Bankr.N.D.Ga.1979) went further, stating abandonment is in the discretion of the trustee, bounded only by that of the court. Janmar held there is no duty to abandon unless administration would cause expense to the estate. Janmar further stated that the right to demand abandonment provided in Sec. 554(b) is only useful " 'where the trustee is willing to stipulate to such an order but, perhaps because of lack of assets in the estate, is unwilling to prepare it.' " (quoting Murphy, Creditors' Rights in Bankruptcy, Sec. 4.12, pp. 4-16 (1980)). In Janmar, creditors claimed the estate held no equity in the property, and requested the court compel abandonment. The court refused to do so