**In re the GIBBONS–GRABLE COMPANY.**

**Bankruptcy No. 686–00875.**

United States Bankruptcy Court, N.D. Ohio.

Dec. 20, 1991.

See also 100 B.R. 901.

John F. Buchman, Day, Ketterer, Raley Wright & Rybolt, Canton, Ohio, for Newmarket Hotel Ltd. and other general creditors.

## MEMORANDUM OF DECISION

### JAMES H. WILLIAMS, Chief Judge.

Several general unsecured creditors (Creditors) of The Gibbons–Grable Company (Debtor) bring for the court's consideration a Motion to Abandon Certain Preference Claims (Motion). The Motion requests the court to require abandonment by Lee J. DiCola (Trustee), Trustee for The Gibbons–Grable Assets Disposition Trust (Trust), an entity created pursuant to Debtor's confirmed reorganization plan. Oral argument and testimony was heard November 21, 1991. Pursuant to the court's direction, the parties then submitted briefs in support of their respective positions.

The court has jurisdiction in this matter by virtue of 28 U.S.C. § 1334(b) and General Order No. 84 entered in this district on July 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). This Memorandum of Decision constitutes the court's findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052.

## CASE HISTORY

The Trust was created and became effective when Debtor's Chapter 11 reorganization plan was confirmed in June, 1988. The Trustee assumed administrative duties as defined by the plan, including the power to prosecute or defend all actions affecting the Trust, to compromise claims or to abandon Trust assets. Although the Trustee's powers derive from the Trust, he is subject to the jurisdiction of this court and his power to bring a cause of action which is property of the estate is comparable to that of a Chapter 7 or 11 Trustee under 11 U.S.C. §§ 323(b), 704 and 1106. 11 U.S.C. § 547 authorizes a trustee to avoid certain transfers deemed to give a creditor a preferential advantage.

The Trustee currently has pending 31 various preference actions which were filed in 1989 (Phase I Actions). In October, 1991, the Trustee brought 26 additional adversary proceedings under 11 U.S.C. §§ 547(b) and 550 (Phase II Actions) seeking the avoidance of preferential transfers based on an extension of a theory adopted by the Sixth Circuit in *In re C–L Cartage, Inc.*, 899 F.2d 1490 (6th Cir.1990). That case authorized the recovery of payments to a non-insider during the one-year period prior to filing if such payments had the effect of reducing the liability of an insider guarantor. The Trustee advances the even broader concept that payments to subcontractors reduced the liability of Debtor's construction bonding company and insiders who agreed to indemnify the surety. Several defendants have filed motions for summary judgment in the Phase II Actions, which await disposition pending the outcome of this Motion.

The Creditors filed the Motion October 28, 1991. They urge the court to compel the Trustee's abandonment of the Phase II Actions, in that the property is of inconsequential value and benefit to the estate. Simply put, the Creditors believe the amount of expense the Trust will incur in litigating this expansive view of the so-

called *Deprizio* doctrine (*Levit v. Ingersoll Rand Financial Corp.*, 874 F.2d 1186 (7th Cir.1989)) will far exceed any recovery by the estate.

## DISCUSSION

■ The court has the authority, on motion of a party in interest and pursuant to notice and hearing, to order a trustee to abandon any property of the estate that is either "burdensome" or of "inconsequential value and benefit" to the estate. 11 U.S.C. § 554(b) A trustee has a duty to the estate's creditors to provide impartial administration for their benefit. *Wissman v. Pittsburgh Nat. Bank*, 942 F.2d 867 (4th Cir.1991) In executing that duty, "[t]he trustee may generally pursue a cause of action or, in his best judgment, compromise, settle or abandon legal claims." *In re American Energy, Inc.*, 49 B.R. 420 (Bankr.D.N.D.1985). "However ... the trustee is not bound to accept a burdensome right of action and pursue it to a litigious but unprofitable conclusion." *In re Fluharty*, 7 B.R. 677 (Bankr.N.D.Ohio 1980).

■ The parties cannot cite to any published authority governing a trustee's right to pursue a cause of action he believes to be beneficial in the face of creditor opposition, and the court's own research has also come up empty. The most recent opinion in this Circuit concerning abandonment of estate property, *In re K.C. Machine & Tool Co.*, 816 F.2d 238 (6th Cir.1987) is cited by both the Trustee and Creditors. While not factually similar, *K.C. Machine* does state some general principles as to when abandonment is appropriate.

*K.C. Machine* involved a debtor which converted its Chapter 11 proceeding to one under Chapter 7. Its assets were subject to both local tax liens and a security interest in excess of the assets' value. The trustee procured a purchase offer and moved, with the support of the secured creditor, to sell the machinery and equipment free and clear of liens. The taxing authority objected and proposed the abandonment of the assets to the debtor. Abandonment would allow the taxing authority to maintain a priority status in distribution, whereas a sale free and clear of liens would result in the subordination of the tax lien to the claims of Chapter 11 creditors under 11 U.S.C. § 724(b). Because there was no equity in the property and the taxing authority did not consent to the sale, the bankruptcy court refused to confirm the sale and ordered abandonment.

The Sixth Circuit upheld the District Court's reversal of the abandonment order. While conceding "considerable merit" in the contention that the complete lack of equity compelled abandonment, the court's determination turned on the fact that the subordination of tax liens pursuant to 11 U.S.C. § 724(b) created a benefit to the estate by freeing up over $150,000.00 for payment to administrative claimants. In generally discussing the abandonment concept, the court observed:

> An order compelling abandonment is the exception, not the rule. Abandonment should only be compelled in order to help the creditors by assuring some benefit in the administration of each asset.... Abandonment should not be ordered where the benefit of administering the assets exceeds the cost of doing so.

*Id.* at 246. The court further commented that "[a]bsent an attempt by the trustee to churn property worthless to the estate just to increase fees, abandonment should very rarely be ordered." *Id.* One opinion, referenced in a footnote in *K.C. Machine*, held that a party in interest could not compel a trustee to abandon estate property if the trustee did not consent. *In re Janmar, Inc.*, 4 B.R. 4 (Bankr.N.D.Ga.1979).

Two other cases dealing with the trustee's discretion to compromise or abandon property have also given deference to the Trustee's position. In *In re Continental Mortgage Investors*, 5 B.R. 773 (D.Mass. 1980), the trustee proposed a compromise of equitable subordination and fraudulent conveyance claims against certain creditors. The trustee undertook an extensive analysis of the likelihood of success on these claims and concluded the limited benefit to the estate warranted a compromise. Though the court stated it was "clear" that

some of the creditors' conduct was actionable, it accepted the trustee's evaluation, concluding "[t]he test is a pragmatic one." *Id.* at 778.

In *Fluharty, supra,* creditors urged the denial of confirmation of the debtor's Chapter 13 plan on the basis that a Chapter 7 trustee could pursue a "possible" legal malpractice claim on the debtor's behalf which "could perhaps result in the recovery of a substantial sum for the benefit of ... creditors." 7 B.R. at 680. The court stated, "[t]o justify the incurrence of expense on part (sic) of the trustee in pursuing a cause of action, a sufficient prospect of recovery must exist." *Id.* Bankruptcy Judge White noted that the creditors offered no evidence to support the alleged malpractice claim, which lack of proof convinced him there was no sufficient prospect of recovery.

In simple terms, the court is asked to substitute its judgment for that of the Trustee and conclude that the theory upon which he intends to proceed in the Phase II Actions simply will not ultimately withstand attack. While events may prove such a conclusion entirely valid, that is a precipitous leap the court is unprepared to make at this early stage of the proceedings. The Trustee has received not only his counsel's opinion as to the viability of the Phase II Actions, but a second, independent legal opinion concurring that the Phase II Actions should be pursued. The Trustee offered evidence as to his own theory and investigation which led up to the filing of the Phase II Actions. While certainly not dispositive of this motion, the Trustee demonstrated that the Phase I Actions have produced a benefit to the estate, including the funding of an initial small distribution to unsecured creditors.[1] There are other procedural avenues, such as the pending summary judgment motions, which may be expected to shed more light on the Trustee's theories and their viability.

*K.C. Machine* teaches that abandonment should be compelled only in exceptional circumstances. The Trustee has demonstrated to the court's satisfaction that he should not be forced to abandon the Phase II Actions in their infancy. The court finds the motion to abandon not to be well taken and the same is therefore denied.

---

1. The Creditors denigrate the achievements claimed by the Trustee and point out that the high cost of recovery in the Phase I actions supports their position that the Phase II litigation will have unfavorable cost/benefit ratio.