**In re Donald BUCHANAN and Carol Buchanan, Debtors.**

**No. 01–12289.**

United States Bankruptcy Court, N.D. Ohio, Eastern Division.

Dec. 14, 2001.

Jonathan P. Blakely, Cleveland, OH, for Debtors.

Mary Ann Rabin, Cleveland, OH, Chapter 7 Trustee.

### MEMORANDUM OF OPINION

PAT E. MORGENSTERN–CLARREN, Bankruptcy Judge.

Prepetition, the Debtors owned and operated the Geauga County Maple Leaf, a weekly newspaper. The Chapter 7 Trustee filed an Amended Notice to Sell certain of the Debtors' intangible business assets, including the paper's name and postal permit. (Docket 37). The Debtors, who have continued to operate the newspaper postpetition, object to the proposed sale on the grounds that the sale (1) would not result in a meaningful distribution to creditors; and (2) would deprive the Debtors of their right to a fresh start because they want to keep running this business. (Docket 34, 40, 46). Although they have not moved to require the Trustee to abandon the property, that is, in effect, what they request.

The Court held an evidentiary hearing on December 5, 2001.[1]

## JURISDICTION

Jurisdiction exists under 28 U.S.C. § 1334 and General Order No. 84 entered on July 16, 1984 by the United States District Court for the Northern District of Ohio. This is a core proceeding under 28 U.S.C. § 157(b)(2)(N).

## FACTS

The Debtors filed this Chapter 7 case primarily to discharge more than $216,000.00 in "overwhelming" debt. Their petition and schedules had a number of errors and omissions, which led the Chapter 7 Trustee to believe initially that this was a no asset case.[2] After investigating and obtaining additional information, the Trustee concluded that the Chapter 7 estate did have business assets that should be administered for the benefit of creditors. The Debtors continue to operate the business postpetition, at first without the Trustee's knowledge (due to the petition and schedule mistakes) and then with her knowledge but without her consent.

### Terms of the Proposed Sale

The Trustee moves to sell these assets to Geauga Newspaper Acquisition, LLC for $25,200.00: the name Geauga County Maple Leaf; the United States Postal Service periodical mail permit; the subscriber, vendor, and advertising lists; the legal notice and display/ classified rate sheets; and the rights to the business telephone and telecopy numbers. Middlefield Banking Company, which holds a security interest in this property, is owed $20,195.26.[3] The Trustee proposes to pay the Bank in full from the sale proceeds and the Bank has not objected to the sale.

The sale terms do not prevent the Debtors from using the subscriber, vendor, and advertising lists in the future or from obtaining a new periodical mail permit or new telephone and telecopy numbers. The Debtors' ability to start a competing newspaper is similarly unrestricted. The Trustee is not selling any of the business's computers, printers, or furniture.

The undisputed testimony showed that the proposed sale is an arms length transaction. There was no evidence that there is any other buyer for this property or that the sale price is inadequate. The Debtors have not scheduled this property or claimed any exemption in it.[4]

### The Debtors' Objection

The Debtors object, in particular, to the sale of the Maple Leaf name, the periodi-

---

1. The Trustee presented her case through the testimony of the Debtors and Jeffrey Karlovec, a representative of the proposed purchaser. The Debtors presented their case through the testimony of Donald Buchanan and the Chapter 7 Trustee. All exhibits were accepted into evidence without objection. At the hearing, the Court advised the parties that the Amended Notice would be treated as a motion under Federal Rule of Bankruptcy Procedure 9014.

2. For the most part, these problems have not been resolved. The Debtors are directed to address these issues promptly through the filing of amendments.

3. The Debtors did not schedule the Bank as a secured creditor. The evidence was inconclusive as to whether the Debtors included the amount owed to the Bank in Schedule F reflecting unsecured debt.

4. While the Debtors stated in a pre-hearing filing that they were amending their exemptions, the file, as of the hearing date, does not reflect an amended filing. To the extent that there is some exemption that may apply, the Court will consider at a later date whether any properly claimed exemption amount should be paid from the sale proceeds. *See* 11 U.S.C. § 522.

cal mail permit, and the subscriber list. There are two prongs to their argument.

First, they argue that these assets should not be sold because the sale will not result, in their words, in a "meaningful distribution to creditors." They base this on the argument that the sale proceeds will go to the Bank, to administrative costs, and perhaps to the IRS as a priority creditor for $1,915.03 in 2000 taxes (although they did not schedule the IRS as a creditor), with only a small percentage at most left to pay general unsecured creditors. While not quite stated, the Debtors imply that the Trustee is abusing her discretion in pursuing the sale in order to generate a commission.

Second, the Debtors contend that the Bankruptcy Code promises them a fresh start, and that this sale would interfere with that by unfairly preventing them from working in their chosen field and supporting their family. The testimony showed that while Mr. Buchanan currently works part-time as a substitute teacher,[5] he does not wish to do so full time. Ms. Buchanan has worked both for another newspaper and in the banking field, but testified "I'm not going to go work at a bank for $7 an hour." She prefers the flexibility of her present schedule for family reasons. They both testified that the newspaper has been the source of most of their income over the last three years. While this is inconsistent with their Statement of Affairs in which they swore that the business did not have any income for the three years before their filing, they believe that they're "not making anything" because they do not draw regular salaries, instead writing checks for groceries and similar expenses as the need arises. They estimate this income at $18–20,000 a year.

The Debtors testified further that it would be unfair to deprive them of the good will that attaches to the Maple Leaf name. They both acknowledge, however, that they never registered the name with the Ohio Secretary of State and that the name was in the public domain until the Trustee filed a trade name registration with the State. The Debtors admit that they would be able to obtain another periodical mail permit. They testified, though, that as a practical matter, the sale of the existing permit would prevent them from remaining in the newspaper business because they would not be able to get critical advertising for another twelve months. They argue that the Code's fresh start policy entitles them to keep these assets.

### ISSUE

The issue is whether the proposed sale should be approved.

### DISCUSSION

The proposed sale and the Debtors' objection to it are best understood by reviewing the overall provisions of Chapter 7 and the role of the Chapter 7 trustee.

#### The Chapter 7 Estate

The filing of a Chapter 7 case creates an estate under Bankruptcy Code § 541(a). 11 U.S.C. § 541(a). The estate consists of the debtor's legal and equitable interests in property, with exceptions not relevant here. 11 U.S.C. § 541(a)(1) and (b). The debtor may exempt certain property from the estate. See 11 U.S.C. § 522(b), Ohio Rev.Code § 2329.662 and Ohio Rev.Code § 2329.66 (under which Ohio opts out of the federal exemptions and uses the state exemptions).

#### The Chapter 7 Trustee

The Chapter 7 trustee, appointed by the United States Trustee, is responsible for administering the estate, including collect-

---

**5.** This income is not listed in the Statement of   Affairs.

ing non-exempt property and reducing it to money, and closing the estate as expeditiously as is compatible with the best interests of the parties. 11 U.S.C. § 704(1). The trustee is compensated for these services, after notice and a hearing, up to a maximum amount established by the Bankruptcy Code. 11 U.S.C. § 326. If the trustee requires legal representation in order to carry out those responsibilities, the trustee may move the court to appoint an attorney. 11 U.S.C. § 327. That attorney's compensation is determined by the court, after an application is filed and opportunity is given for a hearing. 11 U.S.C. § 330. The trustee compensation and legal fees, if any, are paid as administrative costs of the estate. 11 U.S.C. §§ 503(b)(1)(A) and (b)(2).

### Disposition of Estate Property

■ The trustee may deal with estate property in a variety of ways depending on the circumstances, including selling it, returning it to a party holding a secured interest, or abandoning it. *See* 11 U.S.C. §§ 363, 554, 725; *see also, Morgan v. K.C. Mach. & Tool Co. (In re K.C. Mach. & Tool Co.)*, 816 F.2d 238, 242 (6th Cir.1987). A trustee may abandon property if it is burdensome or of inconsequential value and benefit to the estate. 11 U.S.C. § 554; FED. R. BANKR. P. 6007. Generally, a trustee is expected to abandon fully secured property when a sale will only generate funds for the secured creditor and the trustee. *But see, In re K.C. Mach. & Tool Co.*, 816 F.2d 238 (holding that the trustee was not required to abandon fully encum-

bered property where Bankruptcy Code § 724 allowed the trustee to subordinate tax liens, thus creating benefit for the estate). If property is partially secured, a trustee is to exercise discretion in deciding whether to sell it, including evaluating how the proceeds are likely to be distributed. *Id.* at 246.

■ The Sixth Circuit has noted that "[a]n order compelling abandonment is the exception, not the rule" and that "[a]bsent an attempt by the trustee to churn property worthless to the estate just to increase fees, abandonment should very rarely be ordered." *Id.* A handbook issued by the United States Trustee instructs Chapter 7 trustees to abandon property "when the total amount to be realized would not result in a meaningful distribution to creditors or would redound primarily to the benefit of the trustee and professionals." The handbook, put into evidence by the Debtors, is advice given by the United States Trustee to Chapter 7 trustees; it does not set a legal standard for the Court in determining whether estate property should be abandoned.

### Does this proposed sale of estate property meet the requirements of § 363?

Trustees usually reduce estate property to money by selling the assets either to third parties or back to the debtor. Such a sale is subject to Court approval and is governed by Bankruptcy Code § 363.[6] That section provides in general that, after notice and a hearing, a trustee may sell

---

**6.** Section 363 provides in pertinent part:

(b) (1) The trustee, after notice and a hearing, may ... sell ... other than in the ordinary course of business, property of the estate.

\* \* \* \* \* \*

(f) The trustee may sell property under subsection (b) ... of this section free and clear of any interest in such property of an entity other than the estate, only if—

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater

estate property outside of the ordinary course of business, free and clear of all interests, if stated conditions are met.

The Debtors do not dispute that the property at issue here is estate property,[7] that the proposed sale is outside of the ordinary course of business, or that they had notice and a hearing. Having met the basic requirements of § 363, the next inquiry is whether the property may be sold free and clear of other interests. The only party with such an interest is the Bank, the secured creditor. The proposed sale may be made free of the Bank's interest because the sale price is greater than the amount of the Bank's lien, the lien will be paid from the proceeds, and the Bank does not object. Overall, therefore, the terms of the sale fall within Bankruptcy Code § 363.

Although the Debtors object to the sale, they have not identified any Bankruptcy Code section that supports their objection. Nevertheless, the Court will address their concerns.

**Should the sale be disapproved and abandonment ordered because the sale will not generate a "meaningful distribution" to creditors?**

■ The Trustee's two basic options with respect to this property are to sell it to this buyer or to abandon it because there are no other buyers. The Court assumes, therefore, that the Debtors are arguing—at least in part—that instead of selling the property the Trustee should be required to abandon it because it is of inconsequential value and benefit to the estate.[8]

To the contrary, the evidence established that the Trustee ferreted out assets that were not initially disclosed, considered a legitimate offer made by an independent buyer, and proposed a sale for more than $25,000 that will pay the secured creditor and the unscheduled IRS priority debt in full, with enough funds to pay the anticipated administrative expenses (including any allowed compensation to the Trustee and her attorney). The Trustee, who is familiar with the estate details, testified that it is her hope and expectation that administrative expenses will be low enough that there will also be a small dividend to general unsecured creditors.[9]

■ In order to win approval for a sale, a trustee is not required to show that the sale will produce enough money to pay all or most of the claims. Very few sales in Chapter 7 cases generate enough money to pay all, or even a majority, of the debts. In fact, Congress anticipated that estate money will run out in some cases before all creditors are paid, which is why the Code states the order of priority in which different categories of creditors are to be paid. 11 U.S.C. § 726. Instead, since the sale requirements of § 363 are otherwise met in this case, the question is whether the disputed property is "both of inconsequen-

---

than the aggregate value of all liens on such property; [or]

  *   *   *   *   *   *

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

7. The Debtors suggested in initial filings and arguments that some of the property may not be estate property. To the extent that argument is still advanced, the Court finds that the evidence proved that all items at issue are property of the Chapter 7 estate.

8. A debtor may file a motion asking the Court to order a trustee to abandon property. 11 U.S.C. § 554(b). The Debtors did not file such a motion here, but the result would not have been any different if they had.

9. The Debtors argued that there may be other administrative claims that would reduce the funds, but there was insufficient evidence to establish that.

tial value *and* inconsequential benefit to the estate," *In re K.C. Machine & Tool Co.*, 816 F.2d at 245, such that abandonment is the better alternative. (Emphasis in original). Given the $25,000 purchase offer as against the secured debt, the property is not of inconsequential value. And the property is not of inconsequential benefit to the estate because selling it will create a fund that will pay secured and priority creditors, with a possibility of a distribution to unsecured creditors after administrative expenses.

The three cases cited by the Debtors to support their position are not controlling or persuasive. The underlying theme in those cases is that the bankruptcy court felt that trustees were pursuing the sale of estate assets primarily to obtain trustee compensation. *In re Tobin*, 202 B.R. 339 (Bankr.R.I.1996); *In re Dorn*, 167 B.R. 860 (Bankr.S.D.Ohio 1994); *In re Griggs*, 168 B.R. 174 (Bankr.S.D.Ohio 1994). There was no such factual showing in this case.

**Should the sale be disapproved and abandonment ordered because it will deprive the Debtors of their fresh start by interfering with their ability to continue their chosen livelihood?**

The Debtors argue that they are entitled to a fresh start under the Bankruptcy Code, and can only get that by being allowed to keep this property. They wish to continue to edit and publish this newspaper, and believe that operations have begun to improve. The sale terms would not restrict them from starting another newspaper, but they do not want to do that and do not think it is economically feasible. They are capable of finding other employment, but choose not to. The Trustee posits that this consideration is not relevant to the issue at hand. While this Court sympathizes with the Debtors' preferences, it agrees that this is not a relevant consideration in deciding whether the sale should be approved.

In making their argument, the Debtors blur the line between the relief and opportunities offered to individual debtors under Chapter 7 and Chapter 13 of the Bankruptcy Code. Chapter 13 permits an eligible debtor to reorganize a business and pay prepetition debts over a period of years. At the end of the agreed-upon time, a debtor who has made the required payments is discharged from certain debt and moves forward with the business unburdened by those claims. In a Chapter 7 case, on the other hand, the debtor at the outset surrenders non-exempt assets for the benefit of creditors and receives a discharge from specified debts in a matter of months.

The Bankruptcy Code does not authorize a Chapter 7 debtor to keep valuable estate property without payment over the Trustee's objection in an attempt to reorganize a business, all in the name of providing a fresh start. The fresh start given to the Chapter 7 debtor is the debt release (here, more than $200,000 in unsecured debt), the right to keep exempt property, and the opportunity to start again; there is, however, no promise that an individual will be able to maintain the same business operation with estate assets. The sale of the estate property in this case does not interfere with or run contrary to the Debtors' right to a fresh start. Stated simply, the Debtors are asking for relief that Congress has not provided to individuals filing Chapter 7 cases.

### CONCLUSION

For the reasons stated, the Trustee's Amended Notice to Sell Assets, treated as a motion, is granted.