In re VIET VU and Mai Vu, Debtors.

Viet Vu and Mai Vu, Appellants,

v.

John T. Kendall, Chapter 7 Trustee, Appellee.

BAP No. NC–99–1523–RyMeR.
Bankruptcy No. 92–50827–JRG–7.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Jan. 20, 2000.

Decided Feb. 8, 2000.

Susan B. Luce, Law Offices of Charles E. Logan, San Jose, CA, for Viet Vu.

James D. Sumner, San Jose, CA, for Mai Vu.

Eric A. Nyberg, Kornfield, Paul & Bupp, Oakland, CA, for John T. Kendall, trustee.

Before RYAN, MEYERS, and RUSSELL, Bankruptcy Judges.

## OPINION

RYAN, Bankruptcy Judge.

After converting their chapter 11 [1] bankruptcy case to chapter 7, Viet and Mai Vu ("Debtors") filed a motion (the "Motion") to compel the chapter 7 trustee to abandon their residence (the "Property"). The chapter 7 trustee filed a motion to sell the Property (the "Sale Motion"), and both motions were set for hearing on the same

---

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

day. The bankruptcy court denied the Motion and approved the Sale Motion.

Debtors timely appealed.[2] We AFFIRM.

## I. FACTS

On February 10, 1992 (the "Filing Date"), Debtors filed their chapter 11 bankruptcy petition. In September 1994, John T. Kendall ("Trustee") was appointed chapter 11 trustee. On January 12, 1999, and after unsuccessfully proposing a chapter 11 plan, Debtors' case was converted to chapter 7, and Trustee was appointed chapter 7 trustee.

On May 24, 1999, Debtors filed the Motion. The Motion contended that as of the Filing Date, there was no equity in the Property and that the Property was therefore burdensome and of inconsequential value and benefit to the estate. Specifically, Debtors contended that the market value of the Property as of the Filing Date was approximately $1.1 million and that there were approximately $1.3 million in encumbrances in addition to Debtors' $75,000 homestead exemption.[3] Therefore, they contended that the Property was burdensome or of inconsequential value and benefit to the estate because as of the Filing Date, there was no equity in the Property. Alternatively, Debtors argued that even if there were equity in the Property as of the Filing Date, in determining whether the Property was burdensome or of inconsequential value and benefit to the estate, the court had to consider the amount that Debtors spent towards increasing the equity and improving the Property postpetition.[4] The Motion stated that

> [t]here is still $814,000 owed to Bank of America; $109,086 in unpaid property taxes; administrative expense credits of $965,401.83; and the Debtors' homestead exemption of $75,000 to be deducted prior to any money coming in to the estate. Based upon these figures, the [P]roperty is of inconsequential value to the estate and must be abandoned.

Mot. to Compel Trustee to Abandon Property (May 24, 1999), at 4.

On July 1, 1999, Trustee filed the Sale Motion, seeking a court order approving the sale of the Property free and clear of liens for $1.9 million and compelling Debtors to turnover the Property. At the hearing on August 10, 1999, the court denied the Motion and granted the Sale Motion. Debtors timely appealed both orders.

Debtors subsequently filed a motion for stay of the orders granting the Sale Motion and denying the Motion, but the bankruptcy court denied the requests for a stay. Debtors then unsuccessfully sought a stay pending appeal from the Bankruptcy Appellate Panel. The appeal from the order granting the Sale Motion was dismissed as being moot.

In September 1999, the court held a hearing on Debtors' application for an ad-

---

2. Debtors appealed both the denial of the Motion, which is at issue in this appeal, and the granting of the Sale Motion. Debtors' appeal of the sale order was dismissed as moot after Debtors unsuccessfully attempted to obtain a stay pending appeal.

3. Specifically, Debtors contended that as of the Filing Date, the Property was encumbered by (1) a deed of trust in favor of Bank of America with an outstanding balance of $900,000, (2) a second deed of trust in favor of Dale Sobeck with an outstanding balance of $300,000, and (3) outstanding property taxes of $40,000.

4. Debtors attached a summary of their expenditures and copies of the checks to reflect the following postpetition payments:

| | |
|---|---|
| Interest on the first mortgage | $519,628 |
| Principal on first mortgage | 85,500 |
| Principal on second mortgage | 150,000 |
| Legal fees to stop foreclosure | 48,000 |
| Maintenance and improvements | 23,293.92 |
| Pool | 3,211.52 |
| Landscaping | 7,725.39 |
| Homeowners' Association Fees | 7,116 |
| Property taxes | 84,630 |

ministrative expense claim, but the court denied the application without prejudice.[5]

## II. ISSUE

Whether the court abused its discretion in denying the Motion.

## III. STANDARD OF REVIEW

■ Once a bankruptcy court has determined whether "the factual predicates for abandonment … are present, the court's decision to authorize or deny abandonment is reviewed for an abuse of discretion." *Johnston v. Webster (In re Johnston)*, 49 F.3d 538, 540 (9th Cir.1995). A court abuses its discretion if its decision is "based on an erroneous conclusion of law or when the record contains no evidence on which the [bankruptcy court] rationally could have based that decision." *Vanderpark Properties, Inc. v. Buchbinder (In re Windmill Farms, Inc.)*, 841 F.2d 1467, 1472 (9th Cir.1988).

## IV. DISCUSSION

In denying the Motion, the bankruptcy court rejected Debtors' alternative contentions that (1) as of the Filing Date, "there was no equity in the [P]roperty and therefore there was no interest by the estate to appreciate," or (2) if there was equity in the Property as of the Filing Date, "even giving the estate any appreciation that has accrued, there is still no equity after deductions for liens, administrative expenses and the Debtors['] homestead exemption." Mot. to Compel Trustee to Abandon Property (May 24, 1999), at 4. The court disagreed with Debtors' contentions and denied the Motion. The court granted the Sale Motion, in which Trustee estimated the sale would bring as much as $742,500 into the estate.

■ Section 554(b) provides that "[o]n request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(b). In order to approve a motion to abandon property, the bankruptcy court must find either that (1) the property is burdensome to the estate or (2) of inconsequential value and inconsequential benefit to the estate. *See* 11 U.S.C. § 554(b); *Morgan v. K.C. Mach. & Tool Co. (In re K.C. Mach. & Tool Co.)*, 816 F.2d 238, 245 (6th Cir.1987). As the Sixth Circuit noted, "[a]n order compelling abandonment is the exception, not the rule. Abandonment should only be compelled in order to help the creditors by assuring some benefit in the administration of each asset…. Absent an attempt by the trustee to churn property worthless to the estate just to increase fees, abandonment should rarely be ordered." *Morgan*, 816 F.2d at 246.

■ Here, the Property was not burdensome, as indicated by the fact that Trustee had a ready buyer for the Property. *Id.* at 245. Therefore, Debtors had to establish that the Property was both of inconsequential value and benefit to the estate.

■ Debtors first argue that the Property was of inconsequential value and benefit to the estate because there allegedly was no equity in the Property as of the Filing Date. Debtors contend that Trustee's interest is as a judicial lien creditor with a claim in the amount of the unsecured debt. If there was no equity in the Property as of the Filing Date, Debtors argue that there was no interest to which Trustee's interest could attach and the estate therefore would not be entitled to postpetition appreciation or other increases in equity. We disagree.

The Ninth Circuit has consistently held without limitation that, under § 541(a)(6),[6]

---

5. At oral argument, Debtors' counsel advised the Panel that the application for approval of Debtors' administrative expense claim had been denied. Additionally, the docket reflects that an order was entered denying the application without prejudice.

6. Section 541(a)(6) provides that property of the estate includes "[p]roceeds, product, off-

the estate is entitled to postpetition appreciation. *See Alsberg v. Robertson (In re Alsberg),* 68 F.3d 312, 314–15 (9th Cir. 1995); *Hyman v. Plotkin (In re Hyman),* 967 F.2d 1316, 1321 (9th Cir.1992); *Schwaber v. Reed (In re Reed),* 940 F.2d 1317, 1323 (9th Cir.1991).[7]

In *Hyman,* the debtors filed a chapter 7 bankruptcy petition and scheduled their home as having a value of $415,000 and encumbrances of $347,611. They claimed a $45,000 homestead exemption to which no objection was filed. The court approved the trustee's application to employ a real estate broker, and the debtors responded by filing for declaratory judgment, claiming that the trustee was not allowed to sell their home because the sum of the encumbrances, estimated costs of sale, and their homestead exemption exceeded the value of the property as of the petition date. The debtors alternatively argued that they were entitled to the postpetition appreciation in their home. The Ninth Circuit rejected the debtors' arguments. First, it acknowledged that California law permitted a forced sale of a homestead only if its sale price exceeded the amount of the homestead exemption and any liens and encumbrances on the property. *Hyman,* 967 F.2d at 1320 (citing CAL.CIV.P.CODE § 704.800). However, it noted that nothing in the Code required that a trustee demonstrate in advance of attempting a sale that the sale price will exceed all costs and encumbrances. The court stated that

> [t]he sale of encumbered property is a relatively complex financial transaction and the trustee cannot be certain of

what he will reap until he has taken bids on the property. Some of the variables involved are known in advance, such as the amounts of the homestead exemption and encumbrances. Other variables remain unknown until the bids are in, such as the sale price and, to a lesser extent, the sale costs.

*Id.* Importantly, the court stated that "[i]n making these calculations, the relevant figure is the actual sale price of the property, not the value of the property listed by the debtor on his schedule of assets." *Id.* at 1320 n. 9.

Similarly, the debtor in *Reed* argued that the bankruptcy estate had no interest in his home as of the commencement of the case because the sum of the encumbrances, liens, and homestead exemption exceeded the value of his one-half interest in the residence. The Ninth Circuit rejected his argument and held that "there is value if the Debtor's one-half interest in the net proceeds from the sale of the entire residence exceeds the value of Debtor's homestead exemption." *Reed,* 940 F.2d at 1323. Thus, despite the debtor's argument that there was no equity in the property as of the filing date, the court measured the value of the home at the time of the sale rather than at the commencement of the case for purposes of determining the estate's interest.

Debtors' argument that the Ninth Circuit precedent can be distinguished because each of the fact patterns involved property in which the debtors had equity as of the petition date is without merit. Specifically, Debtors argue that (1) the

---

spring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6).

**7.** Courts in other circuits have reached the same conclusion. *See Potter v. Drewes (In re Potter),* 228 B.R. 422, 424 (8th Cir. BAP 1999) (stating that "[e]xcept to the extent of the debtor's potential exemption rights, post-petition appreciation in the value of property accrues for the benefit of the trustee"); *In re*

*Paolella,* 85 B.R. 974, 977 (Bankr.E.D.Pa. 1988) (holding that "[b]ecause sale does not generally, if ever, occur simultaneously with formation of a bankruptcy estate, § 541(a)(6) mandates that the estate receive the value of the property at the time of the sale. This value may include appreciation or be enhanced by other circumstances creating equity which occur postpetition."); *In re Heflin,* 215 B.R. 530, 534–35 (Bankr.W.D.Mich.1997) (same).

estate obtained an interest through § 544 and Trustee holds a lien against the Property in the amount of the unsecured debt and, therefore, (2) if there was no equity to which Trustee's lien could attach as of the Filing Date, then Trustee is not entitled to postpetition appreciation. We disagree.

As the bankruptcy court noted, § 541, and not § 544, defines the estate's interest in property. The intent of § 544 is not to limit the trustee's interest in property, but is instead to vest the trustee with the "rights and powers of" a judicial lien creditor. 11 U.S.C. § 544(a); *Duck v. Wells Fargo Bank (In re Spectra Prism Indus., Inc.),* 28 B.R. 397, 399 (9th Cir. BAP 1983). "The legislative history of the 'strong-arm clause' indicates that the basic purpose underlying the section was to avoid the 'evil' of secret liens and transfers of the debtor's property." *Id.* (citation omitted). Clearly, this section was not intended to be used as a shield by debtors to secure their interest in property to the detriment of the bankruptcy estate. Given the clear Ninth Circuit precedent holding without limitation that appreciation inures to the benefit of the estate, we decline to adopt an approach at odds with both that general principle and the purpose behind the strong-arm clause. Thus, under § 541(a)(6), postpetition appreciation is property of the estate without regard to whether there is equity in the property as of the petition date.

Debtors next argue that even if appreciation inures to the bankruptcy estate, the Property was still of inconsequential value and benefit to the estate because there was no equity available to the estate once their postpetition mortgage payments and improvements to the Property were reimbursed as an administrative expense claim. Specifically, Debtors argue that under § 541(a)(6), the estate does not succeed to proceeds or profits that result from earnings of an individual debtor, and that once these proceeds or profits were considered, the Property was of inconsequential value and benefit and therefore should have been abandoned to them. Again, given these facts, we disagree.

■ In the Motion, Debtors asserted an entitlement to an administrative expense claim in the sum of their postpetition mortgage and interest payments, postpetition improvements to the Property, and homeowners' association dues, less the fair market rent of the Property during the pendency of their bankruptcy case. However, because Debtors had not yet sought approval of their administrative expense claim, any amount that they claimed was merely speculative. Further, Debtors provided no evidence that the source of their payments was their postpetition income.[8] Additionally, we note that by paying postpetition mortgage payments, property taxes, and homeowners' association dues, Debtors were able to remain on the Property while attempting to reorganize. Once their case was converted to chapter 7, these payments preserved their exemption. We simply find no support in the Code for Debtors' proposition that in considering whether property of the estate should be abandoned, the court must take into consideration reimbursement for these postpetition payments prior to the approval of an appropriate administrative expense claim. *See In re Prospero,* 107 B.R. 732, 735–36 (Bankr.C.D.Cal.1989); *In re Brusseau,* 57 B.R. 457, 460–61 (Bankr.D.N.D. 1985).[9]

---

8. Debtor stated in his declaration that "I spent my own money, time and labor improving it.... Since the filing of the bankruptcy petition, I have spent hundreds of thousands of dollars in expenses to maintain the property." Decl. of Viet Vu in Supp. of Mot. to Compel Trustee to Abandon Property (May 24, 1999), at 3.

9. *But see O'Leary v. Oregon (In re O'Leary),* 75 B.R. 881 (Bankr.D.Or.1987) (holding that "appreciation of property or an increase in equity post-petition is property acquired after bankruptcy which is not subject to claims of pre-petition creditors"); *Tanner v. FinanceAmerica Consumer Discount Co. (In re Tanner),* 14 B.R. 933 (Bankr.W.D.Pa.1981) (same); *Donahue v. Parker (In re Donahue),*

Here, Trustee estimated in his declaration in support of the Sale Motion that the sale of the Property for $1.9 million would bring a sum in between $266,846 [10] and $742,500 [11] into the estate for payment of creditors' claims.[12]  At this point, Debtors' contention that they were entitled to an administrative expense claim in the approximate net sum of $609,401.83 was mere speculation because the claim had not yet been liquidated against the estate. Therefore, in the face of the Sale Motion and Ninth Circuit precedent, Debtors did not meet their burden of establishing by a preponderance of the evidence that the Property was of inconsequential value and benefit to the estate.  Thus, the court did not abuse its discretion in denying the Motion.

## V.  CONCLUSION

In sum, pursuant to § 541 and Ninth Circuit precedent, the Property became property of the estate as of the Filing Date and any postpetition appreciation inured to the benefit of the estate.

Second, in ruling on the Motion, the court was not required to take into consideration Debtors' argument that they were entitled to an administrative expense claim because Debtors had not yet sought court approval of this claim and it therefore was merely speculative.

Because Debtors did not establish by a preponderance of the evidence that the Property was burdensome or of inconsequential value and benefit to the estate,

110 B.R. 41, 44–45 (Bankr.D.Kan.1990) (same).

10.  This amount included the costs of sale and all encumbrances against the Property.

11.  The $742,500 took into consideration what Trustee termed "valid liens."

12.  The Sale Motion sought approval of the sale free and clear of the following liens: (1) a deed of trust in favor of Dale and Doriana

the court did not abuse its discretion in denying the Motion.

AFFIRMED.

Sobek in the face amount of $300,000; (2) a deed of trust in favor of American Bankers Insurance Company in the face amount of $50,000; (3) a judgment lien held by Commercial Credit Recovery Service; and (4) an Internal Revenue Service tax lien.  The sale price was $1.9 million less liens totaling $940,000 in favor of Bank of America and Santa Clara County, a 6% broker's fee split between the buyer and seller, and costs of sale.