FILED

AUG 27 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re:                                   )   BAP No. AZ-13-1085-PaKiTa
                                         )
CHRISTOPHER E. GALLOWAY and              )   Bankr. No. 12-05758
RHONDA A. GALLOWAY,                      )
                                         )
            Debtors.                     )
_____        )
                                         )
CHRISTOPHER E. GALLOWAY;                 )
RHONDA A. GALLOWAY,                      )
                                         )
            Appellants,                  )
                                         )
v.                                       )   **M E M O R A N D U M**[1]
                                         )
JILL H. FORD, Chapter 7                  )
Trustee; GARY D. PURCELL,                )
                                         )
            Appellees.                   )
_____        )

Submitted Without Argument on July 25, 2014[2]

Filed - August 27, 2014

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable George B. Nielsen, Bankruptcy Judge, Presiding

Appearances:     Christopher E. Galloway and Rhonda A. Galloway,
                 pro se, on brief; Dawn M. Maguire and John P.

_____

   [1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

   [2] By order entered on April 4, 2014, and after notice to the parties and a review of the briefs and record, the Panel unanimously determined oral argument was not needed. Fed. R. Bankr. P. 8012.

Carter of Allen, Sala & Bayne, PLC on brief for Jill H. Ford, Chapter 7 Trustee.

Before: PAPPAS, KIRSCHER, and TAYLOR, Bankruptcy Judges.

Chapter 7[3] debtors Christopher E. Galloway ("Christopher") and Rhonda A. Galloway ("Rhonda" and, together, "Debtors")[4] appeal an order of the bankruptcy court which denied Debtors' motion to dismiss the chapter 7 case, denied Debtors' motion to abandon property, and granted the motion of trustee Jill H. Ford ("Trustee") to approve a compromise. We AFFIRM the provisions in the order denying dismissal and denying abandonment, VACATE the provision in the order approving the compromise, and REMAND this matter to the bankruptcy court for further proceedings.

**FACTS**

The dispute in this appeal centers on a malpractice lawsuit Debtors had prosecuted in Maricopa County Superior Court (the "Superior Court") since 2007 against physician Appellee Gary D. Purcell, M.D. ("Purcell") arising out of procedures performed on Christopher (the "Malpractice Action"). In that action, the Superior Court ordered Debtors to file an affidavit pursuant to

---

[3] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all Civil Rule references are to the Federal Rules of Civil Procedure 1-86.

[4] We refer to Debtors by first name for convenience and clarity; no disrespect is intended.

-2-

Ariz. Rev. Stat. ("A.R.S.") § 12-2602[5] concerning the need for expert witness testimony. When Debtors failed to file that affidavit, Purcell moved to dismiss, and the Superior Court dismissed the Malpractice Action in April 4, 2008.

Over two years later, Debtors filed a Motion to Refile and Appeal Judgment Due to Attorney Misrepresentation (the "Refile/Appeal Motion"). At a hearing, the Superior Court denied the Refile/Appeal Motion, but allowed Debtors to file an Arizona Rules of Court 60(c)[6] Motion for Relief from the Order of Dismissal. Debtors filed such a motion, but at the hearing, the Superior Court denied the motion. On February 29, 2012, Debtors appealed the denial of their Refile/Appeal Motion to the Arizona Court of Appeals (the "State Appeal").

Debtors filed a chapter 7 bankruptcy petition on March 21, 2012. They did not disclose the existence of the Malpractice Action or the pending State Appeal in their petition, schedules, or statement of financial affairs.

Trustee filed a no-asset report in the bankruptcy case on June 13, 2012. When Purcell apparently notified the Arizona Court of Appeals that Debtors had filed a bankruptcy petition,

---

[5] "[A.R.S.] § 12-2602. Preliminary expert opinion testimony; certification. If a claim against a licensed professional is asserted in a civil action, the claimant or the claimant's attorney shall certify in a written statement that is filed and served with the claim whether or not expert opinion testimony is necessary to prove the licensed professional's standard of care or liability for the claim."

[6] With minor variations, Arizona Rule of Court 60(c) is identical to Civil Rule 60(b).

-3-

the court stayed the State Appeal. Debtors then informed Trustee of the stay of the State Appeal on July 2, 2012, and, on the same day, Trustee withdrew her no-asset report.

On July 9, 2012, Debtors, acting pro se, filed a motion to dismiss the bankruptcy case (the "First Dismissal Motion"). Debtors argued that they had filed for bankruptcy relief with the understanding that the State Appeal had not been acted on by the Arizona Court of Appeals and had no value. After learning that Trustee had engaged an attorney to represent her in connection with the Malpractice Action, Debtors argued that they did not wish to be responsible for compensating an attorney who would not necessarily be acting in their interest. Debtors were also concerned that Trustee's attorney had offices in the same building as Purcell's attorney. Summarizing their position, they explained:

> [Debtors] feel[] that their right to compensation for said damages and punitive rewards, if any, should take precedence over their current fiscal situation. . . . they should be afforded their constitutional right to representation of their own choosing in the Appellate Court, their right to pursue their case if said case is approved via the Appellate Court, and their right to withdraw from said Bankruptcy proceedings and to refile, if needed, at a later date.

Trustee responded, pointing out that Debtors had no absolute right to dismiss a chapter 7 case, and that the Malpractice Action was property of the estate that Debtors failed to disclose in their petition. As to Debtors' suggestion that Trustee's and Purcell's attorneys had offices in the same building, Trustee argued that there was no conflict of interest, because the offices were separate, and the only thing both firms shared was the same address.

-4-

The bankruptcy court heard arguments on the First Dismissal Motion on August 31, 2012.[7] The court denied the First Dismissal Motion because "[i]t would cause plain legal prejudice to other parties, the Trustee and the beneficiaries of the Trustee, who are the creditors, to close this case without investigating this cause of action." Hr'g Tr. 17:4-7, August 31, 2012. The order denying the First Dismissal Motion was not appealed.

Debtors were granted a discharge on September 24, 2012. The Arizona Court of Appeals, after receipt of notice of the discharge, reactivated the State Appeal on October 5, 2012. The record is not clear regarding the current status of the appeal.

Debtors filed a Second Motion to Dismiss ("Second Dismissal Motion") on December 10, 2012, generally restating their arguments in the First Dismissal Motion. Trustee responded, restating her position, and arguing further that the creditors could be harmed by premature dismissal of the case.

Trustee states in her brief in this appeal that, following the denial of the First Dismissal Motion, she "determined that the Appeal would be limited to a nuisance value. As a result, the Trustee negotiated a nuisance settlement with [Purcell]." Trustee Br. at 7. On January 2, 2013, Trustee filed a motion to approve a compromise whereby Purcell would pay the estate $4,000

---

[7] The parties did not include a transcript of this hearing in the appellate record, but a copy is available in the bankruptcy court's docket. Bk. Dkt. No. 109. We have exercised our discretion to review the transcript. O'Rourke v. Seaboard Surety Co. (In re E.R. Fegert), 887 F.2d 955, 957-58 (9th Cir. 1988); Atwood v. Chase Manhattan Mrtg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

to fully settle the claims asserted in the Malpractice Action. In the motion, Trustee reviewed the facts of the Malpractice Action and discussed some of the factors used to weigh the reasonableness of compromises articulated by the Ninth Circuit in Martin v. Kane (In re A&C Props.), 784 F.2d 1377, 1381 (9th Cir. 1986). In support of the settlement, Trustee noted that: (1) the Malpractice Action had been dismissed by the state court four years ago for Debtors' failure to diligently pursue the litigation; (2) Debtors' proposed expert witness did not meet the qualifications standards required by A.R.S. § 12-2602(c); (3) Debtors had admitted in at least two pleadings in the bankruptcy case that several attorneys have advised them that their State Appeal was a "Hail Mary attempt with little or no chance of success"; (4) there were inconsistencies in Debtors' pleadings as to which of Christopher's knees was injured, and that a claim for injury to his left knee would, potentially, be barred by the Arizona statute of limitations; and (5) collection of any judgment Debtors might obtain would require authorization from Medicare.

Debtors responded to Trustee's motion on January 8, 2013, in a pleading entitled "Debtors' Objection to Trustee's Motion to Approve Settlement and Compromise of Claim and Motion to Compel Abandonment." In addition to opposing approval of Trustee's proposed settlement with Purcell, Debtors sought an order deeming the claims against Purcell abandoned under § 554. In Debtors' response, they appear to concede that two of the A&C Props. factors were satisfied: that there was little probability of success in the litigation, and that collection may be difficult.

As to the third and fourth A&C Props. criteria, which focus on the complexities of litigation and the interests of the creditors, Debtors indicated that Trustee had never requested any medical records or information from doctors treating Christopher. Debtors continued to insist that they had the legal right to pursue the State Appeal. Finally, Debtors argued that, if Trustee was correct, the settlement had so little value to the estate and creditors that the bankruptcy court should order the Malpractice Action be abandoned to Debtors.

The hearing on Debtors' Second Dismissal Motion, the Settlement Motion, and Debtors' Motion for Abandonment, occurred on February 8, 2013. Based solely on the record, and without hearing any testimony or taking other evidence, the bankruptcy court made a number of findings and conclusions concerning the merits of the three motions.

The bankruptcy court observed that "Debtors did not understand that they lost control of the Malpractice Action when they filed the bankruptcy petition. Giving up control over this litigation is one of the bargained for things that they have to do in order to get a bankruptcy discharge." Hr'g Tr. 2:24-25, 3:22-24, February 8, 2013.

The bankruptcy court concluded that the settlement sum, $4,000, was significant under the circumstances, and that while "[t]rustees can choose to abandon assets that have no value for the bankruptcy estate . . . [i]t's frivolous to suggest to abandon an asset that's worth $4,000. Because, you know, that's a lot of money in my neighborhood." Hr'g Tr. 5:10-16.

The bankruptcy court acknowledged Trustee's argument that

there was "nothing in the estate" to fund retention of a medical malpractice attorney and other litigation expenses, and it observed that Debtors had conceded that they had not been able to attract a competent attorney on a contingency basis.

The bankruptcy court also determined that Debtors had not cooperated with Trustee's investigations about the Malpractice Action. A colloquy occurred with Rhonda on this topic:

> THE COURT: You're obligated to cooperate with the Trustee.
>
> RHONDA: We have tried.
>
> THE COURT: No, no, no, no. You didn't try to cooperate. . . . You wanted to do what you wanted to do. That's not the same thing as cooperating. . . .
>
> RHONDA: What we want to do was we wanted to be involved enough to where we could tell them that what they're doing is wrong when they're doing something wrong.

Hr'g Tr. 9:3-15.[8]

The bankruptcy court inquired whether Debtors wanted to purchase the Malpractice Action from the bankruptcy estate for more than $4,000; Debtors declined. The court concluded:

> I am not going to dismiss your case because you don't have the absolute right to dismiss your case. I'm not

---

[8] At the bankruptcy court hearing, Debtors were adamant that Trustee's efforts to settle the Malpractice Action were inappropriate. The bankruptcy judge displayed significant patience in the face of Debtors' passionate and, at times, less than courteous oral advocacy. While the court took pains to attempt to explain the various aspects of the law and procedure implicated by these motions to them, Debtors repeatedly interrupted the bankruptcy judge and declined to acknowledge these explanations. For example, at one point Christopher referred to the proceedings as "a joke" and, later, he threatened to sue the bankruptcy judge. Hr'g Tr. 11:18; 16:22. Debtors' attitude and comments were not helpful to their cause.

-8-

going to let you walk off with this medical mal[practice] case . . . until you can provide . . . a better alternative than you getting it for free. . . . I'm going to approve the settlement agreement because it's the best that the Trustee can do right now. . . . I'm going to deny [the Motion to Abandon] because I can't find that something that's worth $4,000 should be abandoned from a bankruptcy estate.

Hr'g Tr. 16:2-5, 19, 19:18-21.

The bankruptcy court entered an order denying Debtors' Second Dismissal Motion and the Motion for Abandonment, and granting the Settlement Motion, on February 8, 2013.  Debtors filed a timely appeal.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A).  The Panel has jurisdiction under 28 U.S.C. § 158.[9]

**ISSUES**

Whether the bankruptcy court abused its discretion by denying Debtors' motion to dismiss.

Whether the bankruptcy court abused its discretion by denying Debtors' motion to abandon.

Whether the bankruptcy court abused its discretion by approving the Settlement Agreement.

---

[9]  Generally, an order denying a motion to dismiss a bankruptcy case is interlocutory. Krishnamurthy v. Nimmagadda (In re Krishnamurthy), 209 B.R. 714, 718 (9th Cir. BAP 1997). However, in this case, because our consideration of the bankruptcy court's refusal to dismiss the case is intertwined with its ruling on the other motions, we exercise our discretion to treat Debtors' notice of appeal concerning denial of the Second Dismissal Motion as a motion for leave to appeal, which request is GRANTED. Id.; Rule 8003(c).

-9-

**STANDARDS OF REVIEW**

We review the denial of a debtor's motion to dismiss a voluntary chapter 7 case for abuse of discretion. <u>Bartee v. Ainsworth (In re Bartee)</u>, 317 B.R. 362, 365 (9th Cir. BAP 2004).

The bankruptcy court's decision to grant or deny abandonment of property is reviewed for abuse of discretion. <u>Viet Vu v. Kendall (In re Viet Vu)</u>, 245 B.R. 644, 647 (9th Cir. BAP 2000).

The bankruptcy court's decision to approve a compromise or settlement agreement is reviewed for abuse of discretion. <u>Debbie Reynolds Hotel & Casino, Inc. v. Calstar Corp., Inc. (In re Debbie Reynolds Hotel & Casino, Inc.)</u>, 255 F.3d 1061, 1065 (9th Cir. 2001).

A bankruptcy court abuses its discretion if it bases a decision on an incorrect legal rule, or if its application of the law was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. <u>United States v. Hinkson</u>, 585 F.3d 1247, 1261-63 (9th Cir. 2009) (en banc).

**DISCUSSION**

**I.**

**The Malpractice Action is property of the estate**.

Throughout the bankruptcy case and this appeal, Debtors have seemingly refused to acknowledge that their right to pursue the Malpractice Action became property of the estate when they filed their bankruptcy petition. We therefore begin by noting that any argument premised on Debtors' belief that they hold some sort of superior interest in the Malpractice Action to that of the bankruptcy estate, whether legal, equitable, or otherwise, is flatly contrary to law.

-10-

Under § 541(a), property of a bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case, . . . wherever located and by whomever held." The language of § 541(a) in this respect is not ambiguous — all means all: "Congress intended a broad range of property to be included in the estate. . . . The statutory language reflects this scope of the estate . . . . The House and Senate reports on the Bankruptcy Code indicate that § 541(a)(1)'s scope is broad." United States v. Whiting Pools, 462 U.S. 198, 204 (1983); Cusano v. Klein, 264 F.3d 936, 945 (9th Cir. 2001). That legislative history explains:

> The scope of this paragraph [§ 541(a)(1)] is broad. It includes all kinds of property, including tangible or intangible property, causes of action (see Bankruptcy Act § 70a(6)), and all other forms of property currently specified in section 70a of the Bankruptcy Act.

H.R. Rep. No. 95-595, p. 367 (1977); S. Rep. No. 95-989, p. 82 (1978) (emphasis added).

As the legislative history indicates, property of the estate includes causes of action of the debtor that accrue before the petition. Canatella v. Towers (In re Alcala), 918 F.2d 99, 102 (9th Cir. 1990) (explaining that causes of action that accrue before the chapter 7 petition is filed are property of the estate); see also Celotex Corp. v. Edwards, 514 U.S. 300, 307 n.5 (1995) (causes of action owned by the debtor become property of the estate pursuant to § 541). In Arizona, a cause of action for medical malpractice accrues when the patient suffers harm. De Boer v. Brown, 673 P.2d 912, 914-15 (Ariz. 1983); see also Seltzer v. Paul Revere Life Ins. Co., 688 F.3d 966, 971 (9th Cir.

2012) (same, discussing Arizona malpractice law). Here, the Malpractice Action accrued when Christopher was allegedly injured by Purcell, which occurred at some time before 2007 when the Malpractice Action was filed. Because Debtors' claims against Purcell unquestionably arose and were not terminated before they filed the bankruptcy petition, under § 541(a), their rights to recover any damages from Purcell became property of the bankruptcy estate when they filed their bankruptcy petition.

During this litigation, Debtors have at times characterized the legal status of the Malpractice Action as "uncertain" at the time of filing the petition to justify their exclusion of the Malpractice Action from their bankruptcy schedules. However, any assertion by Debtors that their rights to pursue the claims against Purcell had lapsed or been suspended is disingenuous. Indeed, only three weeks before the filing of the bankruptcy petition, Debtors filed the State Appeal in the Arizona Court of Appeals. Simply put, any rights Debtors hold in the Malpractice Action are property of the bankruptcy estate.

## II.

### The bankruptcy court did not abuse its discretion by denying Debtors' Second Dismissal Motion.

Dismissal of a chapter 7 case is governed by § 707(a): "The court may dismiss a case under this chapter only after notice and a hearing and only for cause[.]" In re Bartee, 317 B.R. at 365. Debtors do not have an absolute right to dismiss their voluntary chapter 7 case. Id. Like any interested party, under § 707(a), a debtor must prove by a preponderance of the evidence that "cause" exists to justify dismissal of a chapter 7 case.

-12-

In re Leach, 130 B.R. 855, 856 (9th Cir. BAP 1991). Further, dismissal should only be granted if there will be no harm to creditors. In re Bartee, 317 B.R. at 365; Gill v. Hall (In re Hall), 15 B.R. 913, 917 (9th Cir. BAP 1981)(citing Schroeder v. Int'l Airport Inn P'ship, 517 F.2d 510, 512 (9th Cir. 1975)).

Debtors' arguments for dismissal are based on their understanding that, by dismissing the case, the Malpractice Action would revert to them so they could proceed under their own authority to prosecute that action. By successfully prosecuting that action, Debtors argue, they would have sufficient funds to pay their creditors in full. But, as discussed below, whether Debtors or Trustee could obtain a substantial recovery by prosecuting the Malpractice Action is a matter of high speculation. A debtor's speculative ability to repay creditors outside bankruptcy is not cause for dismissal. Turpen v. Eide (In re Turpen), 244 B.R. 431, 434-35 (8th Cir. BAP 2000).

The bankruptcy court did not err when it concluded that Debtors did not show by a preponderance of the evidence that good cause existed for dismissal of the chapter 7 case. Moreover, the bankruptcy court found that dismissal may harm the creditors because they would lose the value associated with Trustee's proposed settlement of the Malpractice Action, $4,000. We find no error in this finding. Because the bankruptcy court applied the correct law in resolving the Second Dismissal Motion, and its application of the law to these facts was not illogical, implausible, or without support in inferences that may be drawn from the facts in the record, we conclude that the bankruptcy

-13-

court did not abuse its discretion by denying Debtors' Second Dismissal Motion.

### III.

### The bankruptcy court did not abuse its discretion by denying Debtors' Motion to Abandon the Malpractice Action.

Section 554(b) provides that "on request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." § 554(b).[10] In order to grant a motion to abandon property, the bankruptcy court must find either that: (1) the property is burdensome to the estate or (2) of inconsequential value and inconsequential benefit to the estate. In re Viet Vu, 245 B.R. at 647. As one court noted, "an order compelling abandonment is the exception, not the rule. Abandonment should only be compelled in order to help the creditors by assuring some

---

[10] At the hearing, the bankruptcy court asked the parties whether the creditors in the bankruptcy case had been given proper notice of Debtors' request that the Malpractice Action be abandoned. Hr'g Tr. 5:18-20; 19:9-17. See Rules 6007(b) (requiring that a request for abandonment be made via motion); Ariz. Local Bankruptcy Rule 6007-1(c)(5) (requiring that a motion for abandonment be served on the parties listed in Rule 6007(a), which dictates that notice be given to "all creditors"). Trustee's counsel was uncertain; Christopher volunteered that they had been noticed. We have reviewed the bankruptcy court's docket, and there is no certificate of service or other indication that creditors were notified. Of course, if the creditors did not receive notice of Debtors' request for abandonment, this procedural deficiency would require denial of the motion. However, we elect to address Debtors' motion on the merits, and because we conclude that the bankruptcy court properly denied it, any notice issue concerning the motion is immaterial.

-14-

benefit in the administration of each asset . . . .  Absent an attempt by the trustee to churn property worthless to the estate just to increase fees, abandonment should rarely be ordered." Morgan v. K.C. Mach. & Tool Co. (In re K.C. Mach. & Tool Co.), 816 F.2d 238, 246 (6th Cir. 1987).  And in evaluating a proposal to abandon property, it is the interests of the estate and the creditors that have primary consideration, not the interests of the debtor.  Johnston v. Webster (In re Johnson), 49 F.3d 538, 541 (9th Cir. 1995) (noting that the debtor is not mentioned in § 554).

Here, the Malpractice Action was not burdensome to the estate because Trustee had a settlement offer in hand to dispose of the asset.  In re Viet Vu, 245 B.R. at 647 (explaining that an offer to buy an asset can show that it is not burdensome). Therefore, to compel abandonment of the Malpractice Action, Debtors were required to establish that it was of inconsequential value and benefit to the estate.  Id.  Debtors had the burden to present a prima facie case, which could be rebutted by evidence that the Malpractice Action had some value and benefit.  Prime Lending II, LLC v. Buerge (In re Buerge), 2014 Bankr. LEXIS 1264, at *28 (10th Cir. BAP 2014).

Debtors' Motion to Abandon was nested within their opposition to Trustee's Settlement Motion; Debtors' arguments on abandonment are inextricably linked with their opposition arguments.  Besides general complaints of ill treatment by Trustee and the bankruptcy court, and assertions that Debtors could obtain a better result if they were prosecuting the State Appeal, the only relevant argument Debtors pose concerning

-15-

abandonment is that unsecured creditors would receive only pennies on the dollar from the $4,000 settlement payment. However, Debtors provided no clear analysis or evidence to support this contention, or to substantiate their assertion that many of the creditors' claims have in fact been otherwise paid or were duplicates. Although it was their burden, and while the settlement amount is indeed modest, Debtors did not show that the $4,000 offered in settlement of the Malpractice Action is of inconsequential value and benefit to the estate and the creditors. Because Debtors did not prove that the Malpractice Action was of inconsequential value and benefit to the estate, the bankruptcy court did not abuse its discretion when it denied the Debtors' Motion for Abandonment.

**IV.**

**The bankruptcy court abused its discretion in approving the Settlement Agreement.**

The bankruptcy court is vested with considerable discretion in approving a bankruptcy estate or trustee's proposed compromises and settlements. Woodson v. Fireman's Fund Ins. Co. (In re Woodson), 839 F.2d 610, 620 (9th Cir. 1988). However, to approve a compromise, the bankruptcy court must be satisfied that its terms are "fair, reasonable and equitable." Martin v. Kane (In re A & C Props.), 784 F.2d 1377, 1382 (9th Cir. 1986). In assessing the reasonableness of a compromise, the Ninth Circuit requires that the bankruptcy court evaluate:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount

> interest of the creditors and a proper deference to their reasonable views in the premises.

Id. at 1382. Trustee, as the party seeking approval of the compromise, bears the burden of proving to the bankruptcy court that a proposed compromise is fair and reasonable in light of these four criteria. Id.

As we discuss below, while Trustee met her burden of showing that the first three A&C Props. criteria were satisfied, Trustee seemingly ignored the fourth criterion. There is also nothing in the record to show that the creditors' interests were given proper consideration by the bankruptcy court.

**A. Probability of Success in the Litigation**. According to Trustee, the Malpractice Claim was effectively dismissed by the Superior Court in 2008. Debtors did not file the required affidavit concerning their proposed expert witness and, apparently, their witness did not meet the professional requirements to offer expert testimony in Arizona. There were also discrepancies in Debtors' pleadings respecting which of Christopher's knees was injured and when. There is also a possible statute of limitations defense to Debtors' claims in the Malpractice Action, in that some or all of Christopher's injuries may have been suffered, or at least affected, before the events alleged in the Malpractice Action.

Moreover, Debtors admitted that they had consulted with several attorneys who told them that they had little chance of success in the Malpractice Action. Additionally, in Debtors' opposition to the Settlement Motion, they seem to agree with Trustee that there was little probability of success in the

-17-

litigation, by arguing that their dim prospects for success were a proper basis to grant an abandonment of the Malpractice Action.

The bankruptcy court considered this prong of A&C Props. and concluded:

> Now, the experienced trustee attorney looked at this medical malpractice case and looked at your inability to be represented by a medical malpractice attorney, even one who would take this case on a contingency and said doesn't look like there's much there.

Hr'g Tr. 7:12-16.

On this record, the bankruptcy court could reasonably conclude that continued pursuit of the Malpractice Action by Trustee would be fruitless or, at most, that the prospects for success in the Malpractice Action were speculative.

**B. The difficulties, if any, to be encountered in the matter of collection.** Trustee argued that, even if successful, it would be difficult to collect the judgment because of the implications in the case of the Medicare Secondary Pay Act. Trustee suggests, without contradiction from Debtors, that a settlement at this late date and time would require additional authority from Medicare, which apparently had provided significant benefits to Debtors, in order to secure the release of any recovered funds to Debtors as the injured party.

Regarding this prong, Debtors again acknowledged in their opposition to the settlement that "collection would be burdensome to the estate and expensive to prosecute" as part of their argument for abandonment.

Based on these facts, the bankruptcy court could reasonably conclude that collection of any recovery in the Malpractice Action could be problematic.

**C. The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it.** In the Settlement Motion, and during the hearing, Trustee described the long and difficult process involved in litigating a medical malpractice claim in state court. Trustee concluded that it would be prohibitively expensive to litigate the Malpractice Action, would require extensive medical record requests, multiple depositions, and the assistance of expensive expert witnesses. Absent the availability of competent litigation counsel willing to "front" such costs for a contingent fee, Trustee concluded that this factor compelled a settlement.

Debtors' opposition to the Settlement Motion repeated their complaints that Trustee had not consulted them or obtained their records. Of course, even if correct, this contention does not address the question of the complexity of the litigation.

The bankruptcy court discussed the complexity of the litigation, observing that:

> In a medical malpractice case the important thing is can you prove by the requisite standard of proof in the state of Arizona that the medical professional committed medical malpractice.

Hr'g Tr. 10:20-22. The court also noted the research that would be required by Trustee to develop a case, acknowledged that Trustee's attorney was likely not qualified in medical malpractice litigation, and observed that engagement of a specialist attorney would likely be required, concluding "that doesn't seem to be [financially possible]." Hr'g Tr. 11:14.

All things considered, the bankruptcy court could reasonably conclude from these facts that, absent a willing contingent-fee

-19-

litigation attorney, which neither Debtors nor Trustee had enlisted, prosecuting the Malpractice Action would be complex and prohibitively expensive.

**D. The interests of the creditors.** Section 704(a)(1) requires a chapter 7 trustee to "collect and reduce to money the property of the estate for which such trustee serves . . . ." We recently observed that the trustee's "primary job" is to convert estate property to money "so that those assets can be distributed to the estate's creditors." In re KVN Corp., ___ B.R. ___, 2014 WL 3738655, at *3 (9th Cir. BAP July 29, 2014) (citing U.S. Tr. v. Joseph (In re Joseph), 208 B.R. 55, 60 (9th Cir. BAP 1997)). As explained in the handbook provided to chapter 7 trustees by the U.S. Trustee program,

> A chapter 7 case must be administered to maximize and expedite dividends to creditors. A trustee shall not administer an estate or an asset in an estate where the proceeds of liquidation will primarily benefit the trustee or the professionals, or unduly delay the resolution of the case. The trustee must be guided by this fundamental principle when acting as trustee. Accordingly, the trustee must consider whether sufficient funds will be generated to make a meaningful distribution to unsecured creditors, including unsecured priority creditors, before administering a case as an asset case. 28 U.S.C. § 586.

In re KVN Corp., at *4 (citing U.S. DOJ Exec. Office for U.S. Trs., Handbook for Chapter 7 Trustees at 4-16 (2012) (emphasis added)). Whether the trustee's liquidation of an asset will result in a "meaningful distribution" to creditors is a question of fact. Id., at *4.[11]

---

[11] Of course, the compensation and expenses of the trustee and her professionals are administrative expenses and, as such, continue...

-20-

In reviewing a bankruptcy court's decision concerning a proposed compromise by the estate, we are guided by the lessons in the case law. First, bankruptcy law traditionally favors compromise, and not litigation for its own sake. Blair v. Peterson (In re Blair), 538 F.2d 849, 851 (9th Cir. 1976). Second, the bankruptcy court should usually give deference to a trustee's exercise of business judgment. Goodwin v. Mickey Thompson Entm't Grp., Inc. (In re Mickey Thompson Entm't Grp., Inc.), 292 B.R. 415, 420 (9th Cir. BAP 2003). And third, while the interests and views of the creditors must be considered, they are not controlling. In re A&C Props., 784 F.2d at 1382 (citing In re The Gen. Store of Beverly Hills, 11 B.R. 539, 541 (9th Cir. BAP 1981)). In applying these principals in this appeal, we observe: (1) denial of Trustee's Settlement Motion does not necessarily mean that the bankruptcy estate will continue to litigate the Malpractice Action; (2) while the bankruptcy court and we should defer to Trustee's exercise of business judgment, we may not abdicate our duty of requiring compliance with the law; and (3) while the creditors' interests will not always dictate the propriety of compromise decisions, they certainly

[11]...continue
are entitled to priority of payment. §§ 503(b); 507(a)(2). As a result, there conceivably could be cases where the distribution of estate funds solely to pay the professional fees of the trustee and her counsel is, in the words of the handbook, "meaningful." For example, meaningful benefit other than payment may accrue to creditors. But where there is no evidence of monetary benefit to non-administrative creditors, we cannot infer such benefit, and appropriate findings of creditor benefit based on admissible evidence and clear analysis are critical.

must be considered by the bankruptcy court.

As explained above, primarily based upon the undisputed facts, Trustee satisfied the burden of persuading the bankruptcy court as to the first three A&C Props. factors. However, while we have scoured the record to find any relevant evidence, Trustee simply made no showing, and the bankruptcy court made no finding,[12] as to the impact of the proposed settlement on the interests of the unsecured creditors. While we will defer to a trustee's good judgment, and to the exercise of discretion by the bankruptcy court, we can not affirm the bankruptcy court's decision to approve what Trustee concedes is a settlement for "nuisance value," without knowing how, or if, creditors will benefit from that settlement.

On this sparse record, it seems likely that the $4,000 in settlement funds will be consumed in paying Trustee's commission and the fees and costs of Trustee's counsel.[13] The Settlement

---

[12] The lack of fact findings by the bankruptcy court is not always fatal to its decision. See Commercial Paper Holders v. Hine (Matter of Beverly Hills Bancorp), 752 F.2d 1334, 1338 (9th Cir. 1984) ("Although remand generally is required for findings of fact, remand is not necessary when the trial court fails to make such findings and the facts in the record are undisputed."). However, the facts needed to understand whether creditors are benefitted by the proposed settlement are not otherwise found in the record.

[13] Recall, before turning her attention to the Malpractice Action, Trustee had filed a no-asset report in this bankruptcy case. Neither the appellate record, nor the bankruptcy court's docket, contains any information to show that Trustee has been able to liquidate any other assets that may be available to distribute to creditors, such that using the $4,000 to pay

continue...

-22-

Motion is conspicuously silent concerning how the settlement will impact the creditors. And while creditors were given notice of Trustee's proposed compromise of the Malpractice Action, no creditors responded to either oppose or support the settlement. Moreover, Trustee's counsel made no reference to the creditors' interests at the hearing. At the hearing, Debtors addressed this point, and the bankruptcy court seemed to acknowledge that the $4,000 in settlement funds would be used to pay administrative expenses:

> RHONDA: The only people that would be paid out of that $4,000 is [Trustee] and [Trustee's Counsel].
>
> THE COURT: Well, that's true.

Hr'g Tr. 6:16-18.

Presumably because Trustee did not address how the proposed settlement would impact the interests of the unsecured creditors, the bankruptcy court made no finding concerning the fourth A&C Props. criterion. Although the case law does not require the bankruptcy court to afford preclusive weight to the interests and views of the unsecured creditors, Ninth Circuit precedent does mandate that the creditors interests be considered in deciding whether to approve a compromise. That did not occur here, and we are therefore compelled to conclude that the bankruptcy court did not properly apply the law and, thus, abused its discretion when it granted Trustee's Settlement Motion. A remand is necessary to allow Trustee, and the bankruptcy court, to consider this

[13]...continue
administrative expenses will inure to the benefit of unsecured claimants.

-23-

important factor.

## CONCLUSION

We AFFIRM those provisions of the bankruptcy court's order denying Debtors' Second Motion to Dismiss the bankruptcy case, and denying Debtors' Motion for Abandonment. However, we VACATE the bankruptcy court's decision to grant Trustee's Settlement Motion and approve the compromise of the Malpractice Action, and REMAND this matter to the bankruptcy court for further proceedings consistent with this decision.[14]

---

[14] We do not think it inconsistent both to affirm the bankruptcy court's decision to deny abandonment of the Malpractice Action, and to vacate the court's decision to approve the settlement. As explained above, Debtors failed to satisfy their burden of proving abandonment was proper, and Trustee failed to satisfy her burden of showing the compromise was fair, reasonable and equitable according to the factors established in binding precedent.